JULIA R. DRAKE, Respondent, *v.* CLINTON F. PAIGE, Impleaded, etc., Appellant.

L. devised his residuary real estate to his son F. and three others, to each a one-fourth part. His executors were empowered to sell any or all of said real estate and apply the avails to the payment of debts, etc., in case the personalty was insufficient for the purpose, and to partition the same after payment of debts among the devisees named, or to sell and divide the proceeds among them ; the testator expressing his intent to be that the avails of his personal estate not specifically bequeathed, and of his residuary real estate, should be applied in payment of his debts,

including mortgages or liens upon the land, and that all devises should pass the real estate to the respective beneficiaries free from incumbrances. F. and one P. were appointed executors; they sold certain of the residuary real estate, receiving bonds and mortgages which the executors assigned, F. receiving the proceeds and applying them to his own use. P. joined in the assignment with knowledge of the desire and purpose of F., to so misappropriate the funds. Upon an accounting before the surrogate F. and P. were charged individually with the amount of the devastavit, and F. being insolvent, P. was compelled to pay the full amount. F., after such misappropriation by him, executed a mortgage upon his interest in the residuary estate, which the mortgagee received in good faith and for value, without knowledge of any claim of P. against F. The mortgage was foreclosed and the mortgagor's interest sold. In an action for partition of that portion of the residuary real estate not sold by the executors, in which plaintiff claimed title to the interest of F. under the foreclosure sale, P. claimed the right to reimbursement out of the share of F. of the amount so paid by him. *Held*, untenable; that upon the death of L. the will vested title to the residuary lands in the devisees named, subject to a power in trust conferred upon the executors, and F. could mortgage or convey his interest ; that by the mortgage and subsequent foreclosure and sale, such interest vested in the purchaser, and plaintiff, having succeeded to the title, was entitled to the share of F., and so the doctrine of subrogation could not be invoked in aid of P., as F. had no interest; that application of the moneys wrongfully taken by F. could not be considered as a partial partition, as at the time of the appropriation the executors were not authorized to make a partition, the debts not having been paid, and as there was no attempt to partition, that by secretly assenting to a misappropriation of the trust funds P. did an act in violation of his duty as trustee, and while he had an equity superior to that of F. it was not superior to that of plaintiff.

*Clapp* v. *Meserole* (1 Keyes, 281), distinguished.

Reported below, 52 Hun, 292.

(Argued June 22, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 30, 1889, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to partition certain lands devised by the eighth clause of the last will and testament of Hazard Lewis, which reads as follows: "All the rest and residue of my estate, whether real or personal, of every name, kind and

description, and wheresoever situate, after the payment of my just debts and funeral and testamentary expenses, I give, devise and bequeath to my said wife Maria, and to my said daughters Jane E. Drake and Caroline L. Paige, and to my said son Frederick, to be divided equally between them, share and share alike. Each of the four said persons to have one-fourth part thereof."

It is not sought in this action to partition all of the lands included in the above devise, but only such portion thereof as the executors did not sell pursuant to the power conferred on them by the ninth ·clause of the will which is so importantly related to this controversy as to require that it be quoted here : " I hereby authorize and empower my executors, hereinafter named, to sell, deed, grant and convey, by ·deed, under seal with common covenants of warranty, any or all my real estate not in this will particularly described and devised, and the avails apply to the payment of my debts and funeral and testamentary expenses, or at their discretion to lease any portion of such real estate for the purpose of paying such debts and expenses. And I authorize them to partition the same after the payment of debts and expenses amongst those in the eighth devise herein named ; or to sell and deed the same and the avails divide among those named in said devise and bequest eight. My intent is that all devises of every name and kind in this will contained shall pass the real estate to the respective beneficiaries, free from incumbrance, and that any and all mortgages and judgments on either of them that shall cover or be a lien upon any of the lands or any portion of the lands in this will devised and described, shall be paid by my executors from the avails of my personal estate not herein bequeathed and the avails of lands not specifically devised, and I hereby direct and empower my said executors to appropriate the avails of my personal estate, not herein bequeathed, and the avails of my real estate not in this will devised by specific description, to the payment of all mortgages and all judgments incumbering any and all real estate in this will devised." The plaintiff asserts title to three of the four undivided shares in

the real estate attempted to be partitioned. That she is the owner of two of the shares is not disputed. But the defendant Paige challenges her right, as against him, to the share of Frederick Lewis.

Lewis mortgaged his interest to the father of the plaintiff. It was subsequently foreclosed and the title obtained on that foreclosure is now in the plaintiff. The defendant Paige claims that he has an equity superior to the rights thus acquired by the plaintiff, because as co-executor with Lewis under the will before us he has been obliged to pay $7,189.97, moneys misappropriated by Lewis and applied to his own use. The appropriation of such moneys to Lewis' individual use took place prior to the execution and delivery of the bond and mortgage to Drake, and the circumstances attending it were as follows: In April, 1871, the executors sold a piece of land devised by the eighth clause of the will, and in part payment thereof received a bond and mortgage for $7,000. Subsequently, and in October, 1872, the executor Lewis, being in embarrassed circumstances, desired to dispose of the bond and mortgage and apply the proceeds to his individual use. And Paige, with knowledge of such desire and purpose on the part of Lewis and with intent to give it effect, united in the execution of an assignment thereof.

March 26, 1872, the executors sold another piece of land and received in payment a bond and mortgage for $4,500, which after the principal had been reduced to $3,600, was on the 4th day of March, 1873, assigned and the proceeds applied to the individual use of Lewis. And it was the purpose of both executors in selling the bond and mortgage to procure the moneys for the individual use of Lewis.

Because of Paige's participation in the unauthorized disposition of the proceeds of such bonds and mortgages he, as well as Lewis, was in an accounting before the surrogate charged individually with the payment of the moneys thus misappropriated. And Frederick Lewis being unable to comply with the decree of the surrogate in such respect, Paige was compelled to make good the devastavit. For the moneys thus paid

he seeks reimbursement out of the share devised to Frederick Lewis, in the lands remaining unsold. To that share plaintiff asserts title obtained under the following circumstances: June 3, 1873, Frederick Lewis and wife executed and delivered to Patrick H. Drake a bond and mortgage for the sum of $60,000 upon Lewis' undivided one-fourth interest in the residuary estate, and also upon certain other lands. The consideration for the mortgage was stated in an agreement executed at the same time which provided, among other things, that it was given to secure Drake for advances to be made in liquidating certain judgments, and in the payment of certain promissory notes of Lewis upon which Drake was an indorser. And it appears that at the time Drake was liable as an indorser upon the paper of Lewis in an amount exceeding $30,000, and that the judgments then a lien on Lewis' property exceeded in amount $31,000, not including interest thereon from the date of their entry.

Drake subsequently paid the notes and advanced upwards of $31,000 to pay the judgments, but instead of taking satisfaction pieces from the judgment creditors, he took assignments to his wife or to himself. Default being made, the mortgage was subsequently foreclosed, and on or about the eleventh of February, the mortgagee, Drake, became the purchaser at the foreclosure sale. The regularity of the foreclosure proceedings is not questioned.

Thereafter the rights thus acquired by Drake passed to his daughter, this plaintiff. The various steps leading to that result are not of importance here.

Other facts appear in the opinion.

*Alex. Cumming* for appellant. The defendant Clinton F. Paige has established his right to be subrogated to the interests of Frederick Lewis under the will, as limited by the stipulation. (*Clapp* v. *Meserole*, 1 Keyes, 281; 5 Waite's Act. & Def. 100; *Campbell* v. *Campbell*, 11 N. J. Eq. 268; Story's Eq. Juris. §§ 791, 792; *Briggs* v. *Davis*, 25 N. Y. 574; *Graham* v. *Dickinson*, 3 Barb. Ch. 169; *Couch* v. *Delaplaine*, 2

N. Y. 397; *Slade* v. *Van Vetchen*, 11 Paige, 21; *Cole* v. *Malcolm*, 66 N. Y. 363; *Thomas* v. *M. F. Ins. Co.*, 40 Hun, 218; 73 N. Y. 399; *Van Santon* v. *S. O. Co.*, 81 id. 171; 3 Pom. Eq. Juris. 469.)

*Stephen C. Millard* for respondent. No estate vested in the executors — simply a power in trust. (*Reed* v. *Underhill*, 12 Barb. 113; *Crittenden* v. *Fairchild*, 41 N. Y. 289; *Hetzel* v. *Barber*, 69 id. 1; 1 R. S. 729; 4 Kent's Comm. [8th ed.] 328.) Frederick Lewis not only took an absolute fee to an undivided one-fourth interest in the said residuary estate, but under the said will he had the right to mortgage or sell his said undivided one-fourth interest, or any part thereof. (*Reed* v. *Underhill*, 12 Barb. 113; *Crittenden* v. *Fairchild*, 41 N. Y. 389; *Hetzel* v. *Barber*, 69 id. 1.) Such a power as is here given to the executors can only be exercised in the manner and for the precise purpose declared and intended by the donor. (*Hetzel* v. *Barber*, 69 N. Y. 1.) The extent of the power, like the extent of an agency created by a written power of attorney, must be sought for in the instrument conferring the power, and authority not found there cannot exist. (*Hetzel* v. *Barber*, 69 N. Y. 13.) The said Frederick Lewis having taken under and by virtue of the 8th subdivision of the said will an absolute fee in an undivided one-fourth part of the said residuary estate, and the said P. H. Drake being a mortgagee in good faith and for value, without notice of any secret lien upon or against the said property, the said one-fourth interest in the said residuary estate, which is sought to be partitioned in this action, belongs to plaintiff. (7 Lans. 492; 69 N. Y. 1; 1 Story's Eq. Juris. § 381; *Fish* v. *Potter*, 2 Keyes, 64; *Shirley* v. *C. S. S. R. Co.*, 2 Edw. 505.) When Drake advanced the money to pay the owners of the judgments and caused them to be assigned to himself and wife, in equity, as against Paige and Lewis, he succeeded to all the rights of these judgment creditors, which in any event were superior to the equitable rights of Paige. (69 N. Y. 12; 2 Story's Eq. Juris. § 1227; 93 N. Y. 225; 26 Hun, 10; 99 N.

Y. 342; 64 id. 294, 397; 3 Abb. [N. C.] 138; 76 N. Y. 301–305; 14 Hun, 398; 6 Abb. [N. C.] 469; 26 N. Y. 417; 23 Iowa, 500; 57 Ind. 509; 42 Cal. 475; 12 Gray, 107; 3 Pom. Eq. Juris. 469; *Hetzel* v. *Barber*, 69 N. Y. 1.)

· PARKER, J.  If the title to the share devised to Frederick Lewis was still in him unencumbered, equity might in this suit protect Paige by charging such share with the amount of Lewis' misappropriation.    But Lewis, for the purpose of securing certain obligations and causing the payment of others, undertook to mortgage the share of the estate devised to him. And default being made, foreclosure and a deed to the plaintiff's predecessor in title resulted.

Our first inquiry, therefore, is whether the title was in Lewis so that he could mortgage or convey an undivided one-fourth of the real estate devised by the eighth clause of the will, and we are thus brought to an examination of its provisions.

The eighth clause devised to Frederick Lewis and three others each an undivided one-fourth share in and to all of the real estate of the deceased not thereinbefore disposed of, and embracing the premises in controversy.  Considered by itself, the language of the eighth clause was operative to vest title in the devisees therein named.

The ninth clause conferred upon the executors, first, power to sell a portion or all of the real estate devised by the eighth clause for the payment of debts, funeral and testamentary expenses; and, second, authority to partition that which remained among the devisees.   But the power to partition or sell for the purpose of dividing the proceeds could not be exercised until after the payment of debts and funeral expenses, with the payment of which the personal estate was first charged, and only in case it should prove insufficient were the executors authorized to sell real estate for that purpose.

In the event of a sale of real estate for the purpose of realizing moneys with which to pay debts, should any remain after their payment, it stood in the place of the land, having for the purposes of partition among the devisees the same incidents and attributes.

And if, in making partition, it should be found necessary to sell some portion of the real estate and divide the proceeds among the devisees, the moneys would still retain the character of real estate for the purposes of partition, and also for the retention of liens. (*Ackerman* v. *Gorton*, 67 N. Y. 63.)

Again, the devise was not to the executors to sell, but to them was given merely a naked power which, after the payment of debts, they might exercise or not, and the estate vested in the devisees subject to the execution of such power, and not in the executors who simply took a power in trust. (*Reed* v. *Underhill*, 12 Barb. 113; *Crittenden* v. *Fairchild*, 41 N. Y. 289; *Hetzel* v. *Barber*, 69 id. 1.)

Lewis could, therefore, mortgage or convey his undivided one-fourth interest in the residuary estate. His grantee, or a person acquiring title by the foreclosure of a mortgage given by Lewis, would be entitled to receive his share in the event of partition by the executors, or if partition should be made by selling lands and dividing the proceeds the moneys divided would, for the purpose of partition, retain the character of real estate and pass to his successor in title.

The suggestion that Drake was not a mortgagee in good faith and for value is not well founded. At the time of the execution and delivery of the mortgage Drake was not aware of the existence of any claims on the part of Paige against Lewis, and the mortgage was immediately placed on record and notice thereby given of his mortgage interest in Lewis' residuary estate. Nor was the consideration inadequate, for at that time there were judgments against Lewis, which had been duly docketed in the county clerk's office of the county in which the real estate was situate, exceeding $31,000 in amount, and which were a lien on this real estate which was thus liable to a sale under execution.

In addition, Drake was an indorser on promissory notes of which Lewis was the maker, and it was to provide for the payment of these notes and the judgments, then a lien on the property, that the mortgage was given. It is true that, instead of causing the judgments to be satisfied of record, he obtained

assignments thereof. But that fact does not affect the situation favorably to the defendant Paige. The judgment creditors received the amount due on the judgments and the notes were paid.

The fact that Drake, as a greater measure of precaution, saw fit to take assignments rather than satisfaction pieces, was a matter about which Lewis could have complained, because not a technical compliance with the agreement and he might have compelled satisfaction of record. But he made no objection to the manner in which the business was done, for his purpose was accomplished when the creditors were, in fact paid, to which end the mortgagee Drake applied more money than the bond and mortgage were given to secure.

The interest then which Frederick Lewis had in the real estate in controversy at the time of the execution of the mortgage has, by foreclosure and subsequent conveyance become vested in the plaintiff, and as to such interest the doctrine of subrogation cannot be invoked in aid of the defendant Paige, for Lewis has no interest therein to which he can be subrogated.

*Clapp* v. *Meserole* (1 Keyes, 281) is not in conflict with the position thus taken. In that case the real estate was devised to the executors in trust to receive the rents and profits until they should sell the property, which they were directed to do, and to divide the proceeds in certain proportions among the legatees.

The surrogate subsequently decreed that they should pay certain sums to the several legatees, which they omitted to do, and thereafter moneys came into the hands of their successor in representation, and the assignee of the persons to whom the executors had sold their interest as legatees and devisees under the will prior to the devastavit claimed to be entitled to share therein, in the same proportion as he would have been entitled to had the executors made default. And the court held that his position was not well taken.

But it will be observed that the title to all the real estate was in the trustees, not in the legatees. The interest of a legatee was assignable but could not be freed from the trust

obligation. The assignee could only acquire the right to succeed to that to which his assignors would become entitled on the distribution, and as they were both trustees and legatees, what could be realized was in some measure dependent on the manner in which they performed their trust. The title to the moneys, which was the subject of controversy, being in the trustees, and the legatees other than the executors not having, in fact, received the sums to which they were severally entitled before the executors as legatees were permitted to take anything, the court directed its application for their benefit, holding that the former unexecuted decree should not be considered as extinguishing their legacies to the extent of the amounts therein directed to be paid.

But the claim most earnestly pressed on our attention is that the court should hold that Lewis now has an equitable interest in the real estate, which equity will lay hold of and appropriate to the benefit of Paige ; that conceding the mortgage from Lewis to Drake and the subsequent foreclosure were effective to divest Lewis of all title, still it did not operate to vest an undivided one-fourth in the purchaser at the foreclosure sale, because Lewis' interest was less than one-fourth in the real estate remaining unsold at the date of the mortgage, and that subsequently Lewis acquired an equitable interest in such real estate which he still has and to which Paige should be subrogated. The argument made in support of such contention briefly is that the mortgages, the proceeds of which were applied to the individual use of Lewis, were received in part payment for real estate devised under the eighth clause of the will, the sale of which, together with subsequent assignment of the mortgages and the application of the proceeds to the individual use of Lewis, all took place before the giving of the bond and mortgage to Drake.

And in as much as the will expressly authorized a sale of lands for the purpose of making partition among the legatees, the moneys thus received by Lewis, with the knowledge and consent of his co-trustee, should be regarded as a payment to him under the authority to partition, and his one-fourth

interest in the residuary estate be held to be diminished to that extent.

Necessarily, therefore, the mortgage to Lewis, could not, and did not embrace an undivided one-fourth interest, and the other three legatees in a subsequent partition, whether made by the executors, or by the court, were entitled not only to an undivided three-fourths of the real estate remaining unsold, but also to such a share of the other undivided one-fourth as would make the realization of each legatee equal to that of Lewis. Such being the condition and situation of the respective interests at the time Lewis gave the mortgage to Drake, it necessarily embraced only such share as Lewis then had, which was less than one-fourth, and measures the extent of interest acquired by plaintiffs predecessor in title. That while the legatees, to whom were devised the other three shares, were because of the special partition to Lewis, entitled to the greater interest in the remaining real estate than an undivided three-fourths in any subsequent partition, still they elected before the surrogate to compel the executors to account for, and pay over the moneys partitioned to Lewis, so that Lewis now has an equitable interest in the property, equal to the amount of the proceeds of the two mortgages, to which this defendant Paige as surety should be subrogated.

This contention on the part of the appellant is not well founded. It will be observed that its foundation rests on the assertion that the court may treat the application of the proceeds of the two mortgages to the individual use of Lewis, as one step in the exercise of the power to partition which the will conferred.

If such a holding be not permissible, then the argument is without support.

And it seems to us very clear that it is not for two reasons:

First. Because at the time of the appropriation of the Morgan and King mortgages the executors did not have the power to partition.

The executors were without authority to exercise the power conferred upon them, save in the manner, and for the purpose

declared by the testator. By the terms of the will there was
first given a power to sell for the purpose of paying the debts
of the testator, and second to sell if necessary to make partition.
But the authority to partition by conveyance to the legatees or
to sell and divide the proceeds, could not be exercised until
after the payment of all the debts, which was made in effect
a condition precedent to any attempt at making a division of
the residuary real estate.

But when the application of the proceeds of the mortgages
to Lewis' individual use was made, the debts had not been
paid. The referee finds that at that time "the debts of the
estate of Hazard Lewis had not been fully paid; the said real
estate was quite largely in debt. There was a mortgage of
$5,000 against the estate held by the Binghamton Savings
Bank, which remained unpaid, and other indebtedness, the
precise amount of which does not appear." We do not under-
stand the correctness of this finding to be questioned, but in
any event its approval by the General Term, in view of the
evidence to support it, makes it conclusive here.

Second. The executors did not attempt to partition. Lewis
was in need of money, and with the knowledge and consent
of his co-executor, Paige, the mortgages were sold, and the
avails taken and used by Lewis, who testified that he borrowed
the money intending to return it to the estate. And there is
no evidence tending to suggest that the executors had any
other purpose in view.

Upon that question the learned referee found "that the
sales  *  *  *  were not made for the purpose of partition-
ing or dividing any portion of the said residuary estate among
the said four persons; or that the said Lewis might receive his
share, or any portion of his share of the residuary estate, or
the avails of the said residuary estate. That the said Lewis
*  *  *  intended to replace and return to the estate the
money thus appropriated and taken by him."

The facts to which we have referred seem to deny the right
of a court of equity to treat the moneys wrongfully taken by
Lewis, as a partial partition under the will. But if it were a

proper exercise of the equitable power of the court to declare that which was in fact a conversion, to have been a partition, notwithstanding the time had not arrived when partition could be made under the will, still a court of equity would refrain from making use of the power, because of the absence of such an equity in favor of Paige as against Drake as would justify its employment. Drake, in good faith and for value, took a mortgage covering the real estate devised to Lewis and placed it on record. He knew nothing of the transaction out of which had grown the claim of Paige against Lewis.

Paige, it is true, had been called on to respond for the devastavit of Lewis; because of it he has a claim against him, but his equity is certainly inferior to that of the good faith mortgagee, whose interest in the real estate Paige implores a court of equity to cut down in his behalf. Inferior, because it was the legitimate outcome of a wrongful act to which Paige was a party. As one of the trustees of the will of Hazard Lewis, it was not only his duty to refrain from using for his own benefit any portion of the assets intrusted to the charge of the executors, but also to use reasonable care to prevent his co-executor from doing so.

But it appears from the evidence, and the referee has found the fact to be, that Paige united in the assignment of the mortgages, for the purpose of enabling Lewis to obtain the proceeds for temporary use. Doubtless it was the intention of both, as Lewis testified, that the money should be returned, but as not unfrequently happens in the use of moneys unlawfully obtained, the intention to restore it to its proper place was prevented by the inability of the trustee. The intention of the parties to a wrong to thereafter right it, does not alter the character of the act. So, when Paige secretly assented to an appropriation of trust funds to the temporary use of Lewis, he did an act in violation of his duty as trustee; an act which rendered him liable to respond to the estate for the full amount. This he has done, and while the conduct of both executors was wrongful, because his co-trustee alone had the benefit of the money, Paige has an equity superior to that of Lewis;

but this superior equity as between these wrong doers, the out-growth of a violated trust, is not superior to that of Drake, who, in ignorance of this breach of duty, took a mortgage upon what the records declared to be an undivided one-fourth of the residuary real estate.

The judgment should be affirmed.

All concur.

Judgment affirmed.