(Surrogate's Court, Queens County.    September, 1902.)

1  SURVIVING EXECUTOR—DEVASTAVIT.
   A surviving executor is not chargeable with the devastavit of a sole acting executor, where it is not shown that the surviving executor was negligent, and suffered his coexecutor to receive and waste the estate, when it was within his power to prevent it by the use of ordinary care.

In the matter of the judicial settlement of the accounts of Richard L. Hunt, executor of William L. Hunt, deceased. Objections to account dismissed.

Edward Jackson (John M. Lyon, of counsel), for petitioner.
George Wallace, for objectors.

NOBLE, S. Objections have been filed to this account by Franklin B. Hunt, one of the residuary legatees named in the will of the deceased. By these objections he seeks to have the account of Richard L. Hunt, the sole surviving executor of above-named deceased, surcharged by an amount exceeding $12,000 more than that with which such executor has charged himself as having come into his hands as funds of decedent's estate. Letters testamentary were granted by this court on December 1, 1890, to Elizabeth P. Hunt, the widow, Richard L. Hunt, and Joseph G. Hunt, sons of the deceased. The executors filed an inventory, showing personal assets coming into their hands amounting to $21,852.12, and represented as follows:

Bond and mortgage of Wright Gillis and Henry Seggemann to
  William L. Hunt, dated March 31, 1896, to secure payment of... $20,000 00
Note of Elbert D. Smith and George G. Smith, amount...........    200 00
Bank account in the Metropolitan Savings Bank.................  1,652 12
                                                               —————————
    Making a total of.....................................  $21,852 12

After several bequests, the testator made the following directions: "I direct my said executors to invest, and keep invested, in good and safe securities, the rest, residue, and remainder of my estate, and pay the income which shall accrue therefrom unto my said wife as long as she shall live, and upon her death," etc., and then provides for the manner in which the residuary estate is to be distributed after the death of his wife,—one-sixth of the residuum to be distributed to Franklin B. Hunt, the objector herein, who now classes as his one-sixth of the residuary estate the sum of $1,679.04 principal, with accrued interest at the rate of 5 per cent. per annum, from the date of decedent's death, which would amount to $293.83, making a total of $1,972.87.

It appears from the testimony adduced on the hearing of the objections that, after the making of the inventory of decedent's estate, the widow and the son Richard L. Hunt took no active part in the administration of the estate, but, by common consent, the son Joseph G. Hunt undertook its active management, and reduced to his possession the three inventoried assets. He transacted all of the business of the estate, received and paid out all moneys due from the estate, all of the income to the widow, and paid all legacies to legatees under the will. It further appears that Joseph G. Hunt, the deceased executor, had residing with him the widow, his mother and coexecutor, and that Richard L. Hunt, the surviving executor, lived on a farm three miles from the place where his coexecutor resided. On November 23, 1895, Joseph G. Hunt, managing executor, suddenly died, while on a business trip to New York City. This brought about the necessity, on the part of the surviving executors, of examining into the condition of their decedent's estate. On opening the safe of the deceased executor, Joseph G. Hunt, the bond, mortgage, note, and bank book above mentioned were found. From memoranda made on the bond (Gillis & Seggemann mortgage) it appeared that $15,800

had been paid on account of the $20,000 due the estate, and, as appeared by said memoranda, Joseph G. Hunt had received these payments of principal and all interest paid on the bond from the time of the death of the testator, William L. Hunt, to and including October 1, 1895. It also appeared from the bank book found in the safe of the deceased executor that he had drawn from the Metropolitan Savings Bank the sum of $1,670, and all drafts were signed "Joseph G. Hunt, Executor." The other asset, the Smith note for $200, was found in the safe, uncollected. There was also found in the safe a bond and mortgage made by Joseph G. Hunt to Elizabeth P. Hunt, Richard L. Hunt, and Joseph G. Hunt, as executors and trustees under the last will and testament of William L. Hunt, deceased. This was not an inventoried asset of the deceased testator, and the existence of this mortgage was not known to the accounting executor until the death of his brother and coexecutor. An examination of various memoranda, vouchers, books of account, etc., found among the deceased executor's effects, aided in tracing part of the moneys collected on account of Gillis & Seggemann mortgage and that drawn from the Metropolitan Savings Bank. It was discovered that he had paid:

| | |
|---|---:|
| To himself a legacy of...... | $4,000 00 |
| A legacy to Libbie Hunt of... | 1,500 00 |
| A legacy to Eugene Hunt of... | 1,500 00 |
| That he had paid off a mortgage, known as the "Hendrickson mortgage," of | 650 00 |
| That he had built the Hendrickson barn... | 324 24 |
| That he had invested on the bond and mortgage from himself to the estate, above mentioned... | 5,000 00 |
| That he had paid funeral and administration expenses... | 893 10 |
| Amounting in all to... | $13,867 34 |

Deducting this from the amount collected, as aforesaid, left unaccounted for the sum of $3,584.78, which amount, by diligent effort on the part of the surviving executor, was traced into various investments made by the deceased executor during his life with funds of the estate converted to his own use, and the particular misappropriations are:

| | |
|---|---:|
| Paying off Hendrickson mortgage... | $650 00 |
| Building Hendrickson barn... | 324 24 |
| Lots bought at Bellmore, Long Island... | 875 00 |
| Mortgage from himself to the estate... | 5,000 00 |
| Lots bought at Dunton, Long Island, in the name of Joseph G. Hunt and Annette E. Hunt... | 4,300 00 |
| Making the total amount misappropriated... | $11,149 24 |

The amount so converted to his own use and misapplied by the deceased executor is sought by the objecting residuary legatee to be surcharged in the accounts of the surviving executor, Richard L. Hunt, and to make him responsible for the devastavit of his coexecutor. To so charge the surviving executor, it must be shown that he was negligent, and suffered his coexecutor to receive and waste the estate, when he had the means of preventing it by proper care. The general rule is that the executor is responsible for his own acts, and

not for those of his associates, and this rule applies as well to joint trustees. The testimony here shows that the investments were made by the decedent in his lifetime, and that the executors continued the investments, evidently deeming them advantageous to the estate. It is further shown that in the administration of the estate Joseph G. Hunt, one of the deceased executors, was, by common consent, made the acting executor. He managed and performed all business of the estate, collected all of the income, paid the same over, and paid all legacies provided for in the will. So far as Richard L. Hunt is concerned, it does not appear that he ever handled one cent of the estate in any way. He was never informed that payments were made on account of the Gillis & Seggemann mortgage, and all the testimony shows that his connection with the affairs of the estate was entirely passive. There is some talk about the hard-up financial condition of Joseph at the time of his father's death, and about his father, in his will, forgiving or canceling a debt due him from Joseph, and on this account it is urged that Richard was negligent in allowing his brother, Joseph, to handle the funds of the estate. The answer to this must be that the testator appointed his executors, one of whom was this son whose debt he had forgiven, and whose financial condition must have been well known to him, but whose poverty evidently did not cause his father to have less faith in his honesty or ability. If the father trusted him, why should not Richard trust his brother? And it appears the mother trusted him. Is not honest poverty quite as worthy of trust as honest wealth? Nowhere in the evidence is it brought home to Richard that he had knowledge of his brother's and coexecutor's misapplication of the funds of the estate; nowhere is the slightest negligence shown; and, in the absence of either, he cannot be made chargeable with the devastavit of his coexecutor. The weight of judicial authority is against it.

Objections are dismissed and account allowed as stated, with the exception of those items agreed upon by counsel as being improper administration charges. Counsel will hand up findings accordingly, and decree will be entered. Decreed accordingly.