would not be a transfer by will; but the moment the appellant accepted the provision under the will in lieu of her dower a tax under and by virtue of the transfer tax act immediately attached upon that performance, and by her acceptance of the legacy for her dower she released all claim to her dower and to every right which she would have under the same.

(42 Misc. Rep. 651.)

### In re JOHNSON.

(Surrogate's Court, Greene County.   February, 1904.)

1. EXECUTOR—LIABILITY—DEFAULT OF COEXECUTOR.
    Where an executor in possession of a mortgage due the estate, forwarded to him by his coexecutor when the mortgagor proposed to pay the same, received checks of a third party for the amount due, and forwarded to the mortgagor a satisfaction, and sent the checks to his coexecutor, he is not liable to make good to the estate the amount of the checks where his coexecutor alone received the money on them, and used it to his own purposes, without the knowledge of the executor originally receiving them, and lost the same and became insolvent.

In the matter of the judicial settlement of William F. Johnson, executor of Horace K. Chittenden, deceased.

On July 30, 1903, a petition was filed in the surrogate's office of Greene county by Hattie A. Schrect, an interested party under said will, praying that the accounts of said executors and trustees be judicially settled, and that said executors show cause why the letters testamentary issued to them should not be revoked, and a new executor or trustee appointed.   On September 22, 1903, William F. Johnson, one of the executors and trustees, filed an account, and a petition praying for the judicial settlement of his said account.   From the account filed in this proceeding by William F. Johnson, it appears that the total amount of assets coming into the hands of the executors and trustees under said will was $5,087.89, which amount has all been paid out or expended, excepting the sum of $775, which amount is in the hands of Addison O. Hull, the coexecutor and trustee under said will; that said Hull always had the supervision and active management of the affairs of the estate of said deceased, and kept the book of accounts showing the assets of the estate and the expenditure of moneys which came into the hands of said executors and trustees belonging to said estate.   Hattie A. Schrect, a beneficiary named in said will, objected to the account so filed so far as it sought to relieve the executor Johnson from liability to account for and pay over said balance, and said Hattie A. Schrect asked that the account of said Johnson be surcharged with said sum of $775, or that the said Johnson and Hull be held to be jointly and severally liable for said sum of $775.

Osborn & Bloodgood, for executor and trustee William F. Johnson.

Pierre S. Jennings, for Hattie A. Schrect.

TALLMADGE, S.   It appears from the testimony that the balance of $775, referred to in the account, consisted of proceeds of a mortgage amounting to $500, and of amounts paid on vendue notes and on sales of personal property.   Two hundred dollars of the $500 representing said mortgage was paid by the mortgagor to Addison O. Hull, the coexecutor, which amount was thereafter retained by him, the mortgage at the time of the payment being in the possession

¶ 1. See Executors and Administrators, vol. 22, Cent. Dig. §§ 511, 521.

of said Hull. Thereafter, and in the month of April, 1892, the mortgagor paid the balance of said mortgage, amounting to $300. At the time of this payment the mortgage was forwarded by Addison O. Hull, who was then residing at Amsterdam, N. Y., to William F. Johnson, who was then residing at Windham, N. Y. The mortgagor forwarded to Johnson checks aggregating $300, which represented the balance due on said mortgage, and Johnson executed a satisfaction of the mortgage, and forwarded the same to the mortgagor. The checks received by him from the mortgagor were third parties' checks, and were either indorsed by Johnson, or not indorsed by him, and forwarded to his coexecutor, Addison O. Hull. About the time of the payment of the balance of said mortgage and the sending of the checks some correspondence was had between Johnson and Hull in reference to the investment of the money by Johnson, and he informed Hull that if he collected and retained the money it would be necessary for him to deposit the same in the Savings Bank of Catskill. Hull informed Johnson that he could invest the same at 5 per cent. interest at Amsterdam. After Hull received the checks, he received the money thereon, and paid the interest thereon to the parties entitled to receive the same under the provisions of said last will and testament until April 1, 1902. The $275 hereinbefore mentioned was all collected and paid to the said Addison O. Hull, excepting the sum of $5, representing an account which was collected by Johnson and paid over to Hull, and $30, the purchase price of a chattel or chattels purchased by Johnson at the vendue, which amount Johnson also paid to Hull, and Hull paid the interest on this $275 to the parties entitled to receive the same until the 1st day of April, 1902. Johnson had no knowledge of how the money was invested by Hull, though he knew that he was paying the parties entitled to receive the same the interest thereon, annually.

It is claimed on the part of Hattie A. Schrect that Addison O. Hull made and executed a note payable to himself and Johnson for $775, which was the only investment he made of said funds, and that said Hull is now insolvent, and that, inasmuch as Johnson received the checks aforesaid, and satisfied said mortgage, he should be held accountable for the same, together with the moneys received and collected by Johnson, and paid over to Hull. The general rule is that an executor is responsible for his own acts, and not for those of his associate, so that, if he receives and misapplies the money, or does any act by which it goes to the hands of the other, who diverts or wastes it, and but for which act the latter would not have had it, a liability to make good the loss results. If, however, the executor is only passive, and simply does not obstruct the receipt and collection of assets by his associate, he is not liable for the latter's waste; but where he knows and assents to such misapplication, or negligently suffers his coexecutor to receive and waste the estate when he has the means of preventing it by proper care, he becomes liable for a resulting loss, but mere assent to the executor's receiving the funds is not enough. Ordinarily, in the collection of assets, the rights of each are alike, and one has no control or supremacy over the other. One therefore may sit passive, and see the other receive funds of the estate, and,

making no objection, be deemed to assent, but that does not make him responsible for what has been received. He must in some manner know and assent to the misapplication. He must be a consenting party to the waste, or neglect some duty consequent upon his knowledge of a misapplication intended or in progress. A wrong done or a duty omitted must lie at the foundation of his liability. This is held in Croft v. Williams, 88 N. Y. 388.

The liability of a coexecutor usually attaches at the time of the payment of the funds from one coexecutor to the other. A misapplication of the funds thereafter, or a devastavit of funds in the hands of one executor without the consent of the other executor, will not create a liability against the executor not in fault. If Johnson had known that Hull was using this money in his individual business, it might have been his duty to have taken some means for the purpose of causing the same to be properly invested, but the evidence shows that Johnson understood that the money was properly invested, and that he had no knowledge that Hull had converted the money to his own use.

In the case of Bruen v. Gillet, 115 N. Y. 10, 21 N. E. 676, 4 L. R. A. 529, 12 Am. St. Rep. 764, the court say:

"We have lately held that one executor is responsible for his own acts, and not for those of his associate; and if the latter collects and misapplies the money the executor who has not received it is not liable for the waste."

In Purdy v. Lynch, 145 N. Y. 462, 40 N. E. 232, the court say:

"The ground of liability is personal neglect. * * * The rules governing the liability of trustees should be strictly maintained, and they should be held to the most rigid accountability for the performance of all their duties as such. Yet in all cases the question is, taking into consideration all the facts and circumstances, has a trustee employed such prudence and diligence in the discharge of his duties as in general men of average prudence and discretion would, under like circumstances, employ in their own affairs? And in determining the proper answer to be given to that question we are to look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place, by reason of which the loss has occurred."

Again, in Nanz v. Oakley, 120 N. Y. 84, 24 N. E. 306, 9 L. R. A. 223, the court say:

"The question in reference to the liability of executors and administrators for the default of each other, independent of any bond, is well settled by the authorities. Each of several executors or administrators has the power to reduce to possession the assets and collect all the debts due the estate, and is responsible for all that he receives. The payment of money or delivery of assets to a coexecutor or coadministrator will not discharge him from liability; for having received the assets in his official capacity he can discharge himself only by due administration thereof in accordance with the requirements of the law. Consequently one joint executor or administrator is not liable for the assets which come into the hands of the other, nor for the laches, waste, devastavit, or mismanagement of his coexecutor or coadministrator, unless he consents to or joins in an act resulting in loss to the estate, in which event he will become liable."

The turning over of the checks in question by Johnson to Hull was not the turning over of assets, under the meaning of the law, creating a liability. The mortgage that Johnson had in his possession represented value, and the checks were substituted in the place of

the mortgage; but the checks were in themselves of no value excepting as they represented value, but the avails or proceeds of the checks were assets under the meaning of the law creating a liability. The avails or proceeds of the checks were not received by Johnson, but were wholly received by Hull, the coexecutor. This distinction is made in the case of Paulding v. Sharkey, 88 N. Y. 432. There the executors were impowered to sell real estate, and they made a joint conveyance. The consideration was paid by check to the order of one of the coexecutors, who in good faith indorsed it to G., a coexecutor, who collected it. The court say:

"By the account submitted to the surrogate it appears that the money in question never came to the hands of Sharkey. There was on his part the exercise of good faith in the execution of his trust. The coexecutor had an equal right with Sharkey to possession of the money, and it came into his hands, therefore, without fault on the part of the respondent."

This distinction is referred to with approval in the case of Bruen v. Gillet, 115 N. Y. 16, 21 N. E. 676, 4 L. R. A. 529, 12 Am. St. Rep. 764, and is also held to be an authority upon the question that turning over a check by one executor to his coexecutor, where the check is collected by such coexecutor, creates no liability on the part of the person receiving such check and turning the same over to such coexecutor in the regular course of business. Matter of Provost, 87 App. Div. 86, 84 N. Y. Supp. 29.

I am therefore of the opinion that Johnson turned over the checks to his coexecutor, who had had the active management and supervision of the affairs of the estate, in good faith, without any fault on his part, and that he should not be charged with the amounts received by such coexecutor, representing such checks. The testimony, however, shows that $5 in cash came into the hands of Johnson at one time which he paid to his coexecutor, and that $30, the purchase price of a chattel or chattels, was also paid by Johnson to his coexecutor, and under the rule previously stated Johnson should be held liable and his account should be surcharged with the sum of $35, unless such moneys were used to pay a portion of the expenses of administration. The testimony fails to disclose what was done with the $5 or $30 paid by Johnson to Hull, and, as the burden was on Johnson to show that the money collected by him was applied in a due course of administration by the trustees, and he has only accounted for the same by showing the payment to his coexecutor, he should be held liable for such amount. I am therefore of the opinion that William F. Johnson, as such executor and trustee, should be held to be jointly and severally liable with his coexecutor, Addison O. Hull, for the payment of said sum of $35, and that his account should be surcharged accordingly.

Decreed accordingly.