BRINCKERHOFF v. ROOSEVELT et al.

(Circuit Court, E. D. New York. August 2, 1904.)

1. CORPORATIONS—LIABILITY OF OFFICERS—NEGLIGENT MANAGEMENT OF CORPORATE BUSINESS.

Defendant was president and trustee of a building association, and, in connection with other trustees, who were authorized to transact the business of the association, made a sale of real estate, which constituted its only property, to a trust company, of which he was also president and a large stockholder, in exchange for certain securities, which were of doubtful validity and value. A bond and mortgage, however, were taken from the trust company as a guaranty of the collection of the securities to the amount of the agreed price of the property, but by agreement the mortgage was not recorded. The trust company desiring to sell the property, defendant procured the passage of a resolution by the trustees of the building association authorizing the cancellation of the mortgage, and it was so canceled, without the knowledge or consent of the stockholders. The trust company was or became insolvent, and nothing was ever realized by the building association from the securities. *Held*, that the cancellation of the mortgage operated as a fraud upon the association, by depriving it of its only valid security, and rendered defendant individually liable for the price of the property, which liability could be enforced at the suit of a stockholder; the association having refused to bring the suit.

2. SAME.

Such suit could be maintained without first exhausting the remedy against the trust company, since the mortgage could have been similarly enforced.

3. SAME.

Shortly after the securities were transferred to the association the trustees caused the loans to be called and the securities sold at auction, the purpose being to cut off outstanding equities. They were bid in for the association for a sum fixed by the trustees, which exceeded or equaled the price for which the real estate had been sold. *Held*, that such sale did not bind the association as to the value of the securities, as between it and the trust company, nor affect its right to enforce the bond and mortgage.

In Equity. Suit by stockholders.

Duncan & Duncan (Frederick S. Duncan, of counsel), for complainant.

George C. Kobbe (George H. Yeaman and John E. Roosevelt, of counsel), for defendants.

THOMAS, District Judge. The Holland Building Association was organized in January, 1890, for "purchasing, taking, holding, and possessing real estate and buildings in the city of New York, and selling, leasing, and improving the same." Its capital stock, of $100,000, was divided into 1,000 shares, of $100 each. All of the capital stock was fully paid in. On February 1, 1890, it purchased and came into possession of 33 Nassau street, in the city of New York, for which it paid $92,500; taking title subject to a mortgage of $82,500 held by Stuart. Thereafter, to March 16, 1891, the building association leased the property for sufficient sums to pay all expenses, corporate expenses, and 5 per cent. dividends upon its stock, and had a surplus of about $4,000. The defendant Roosevelt and Mr. Van Siclen, as president and secretary, respectively, of the building association, executed a deed stating a consideration of $135,000, dated March 16, and acknowledged March 18, 1891, of 33 Nassau street, to the Holland Trust Company; and the same persons, as president and secretary of such trust company, executed a bond and mortgage, dated March 16, 1891, and acknowledged March 31, 1891, to the building association, which mortgage was never recorded. In connection with this conveyance, there was transferred to the trust company $3,900.81 then remaining in the treasury of the building association. No money was paid to the building association, but there was transferred to it certain promissory notes, of the nominal amount of $140,000, held by the trust company, executed by J. W. Coffin, Coffin & Co., Moritz Lippmann, and Coffin & Lippmann, indorsed, "Without recourse, Holland Trust Company, R. B. Roosevelt, President." These notes and the accompanying collateral are herein called the "Brigantine Securities." There was no resolution of the trustees of the Holland Trust Company authorizing such transaction, nor was there any written agreement therefor, except so far as shown in the bond and mortgage and deed. At a special meeting of the trustees of the association held March 12, 1891, at which were present Robert B. Roosevelt, president, William Remsen, John D. Vermeule, G. Van Nostrand, and George Van Siclen, secretary, the following resolution was unanimously passed:

"Resolved that the officers of this company be and they hereby are authorized, empowered and instructed to accept from Holland Trust Company as the consideration for the deed of No. 33 Nassau street, subject to the existing mortgage to Stuart Estate instead of $100,000 cash, all the indebtedness due Holland Trust Company from Brigantine Beach R. R., Brigantine Company, J. W. Coffin & Co., Moritz Lippmann, Coffin & Lippmann and their kindred companies at Brigantine Beach, N. J., with all the collateral belonging thereto for the sum total of the face value of said indebtedness being with accrued interest about $140,000 in amount, provided Holland Trust Company guarantee the payment of $100,000 therefrom to this company and also guarantee 6% per annum dividends on $100,000 to this company so long as we hold said indebtedness, and that Holland Trust Company execute and deliver its bond and mortgage for $100,000 on said 33 Nassau street subject to the existing mortgage for $82,500 held by the estate of Jane Stuart as collateral to said guarantee, said mortgage for $100,000 not to be recorded; with the privilege or call to said trust company to buy back said indebtedness and collateral at any time for $100,000 cash, on payment of all unpaid dividends aforesaid due this company, and pro-

portional dividends up to such time, the dividends, income and profits on said Brigantine and Lippmann and Coffin matters to belong to said Holland Trust Company in consideration of said guaranteed dividend, call, and guarantee."

At a meeting of the executive committee of the building association held March 21, 1891, at which Robert B. Roosevelt and George W. Van Siclen were present, the following resolutions appear:

"Moved that the deed of this company to Holland Trust Company in accordance with a resolution of the board of trustees passed at its special meeting held March 12th, 1891. Carried.

"Moved that the loans and securities of Brigantine Beach and Coffin et al. be accepted from Holland Trust Company together with a mortgage for $100,-000 on number 33 Nassau street, as collateral, in full payment for said premises.

"On motion, ordered that the officers draw and pay a check for $3,900.81 to Holland Trust Company on account of the adjustment of the sale of premises and purchase of securities aforesaid."

The mortgage executed by the trust company to the association, among other things, contained the following:

"Whereas, the said party of the first part is justly indebted to the said party of the second part, in the sum of One hundred thousand dollars lawful money of the United States, secured to be paid by a certain bond or obligation, bearing even date herewith, conditioned for the payment of the said sum of One hundred thousand dollars, to be realized, with interest thereon payable half yearly, within three years from the date hereof, from the proceeds of the promissory notes of Coffin & Co., J. W. Coffin, Coffin & Lippmann and Moritz Lippmann, with the collateral thereto, this day purchased by the party of the second part from the party of the first part it being thereby expressly agreed, that the whole of the said principal sum shall become due after default in the payment of interest, taxes or assessments as hereinafter provided.

"Now this indenture witnesseth, that the said party of the first part, for the better securing the payment of the said sum of money mentioned in the condition of the said bond or obligation, with interest thereon, and also for and in consideration of the sum of one dollar paid by the said party of the second part, the receipt whereof is hereby acknowledged, doth hereby grant and release, unto the said party of the second part, and to its successors and assigns forever: [Here follows description of premises, etc.].

"And the said party of the first part covenants with the said party of the second part as follows:

"First. That the said party of the first part will pay the indebtedness as hereinbefore provided, and if default be made in the payment of any part thereof, the party of the second part shall have power to sell the premises herein described, according to law.

"Second. That Holland Trust Company the said party of the first part, will execute any further necessary assurance of the title to said premises and will forever warrant said title.

"Fourth. And it is hereby expressly agreed that the whole of said principal sum shall become due at the option of the said party of the second part after default in the payment of interest for thirty days, or after default in the payment of any tax or assessment for thirty days after notice and demand."

Thereupon provision is made for enforcing the mortgage in the case of default.

The bond, among other things, states:

"The condition of the above obligation is such, that if the above-bounden Holland Trust Company cause to be paid unto the above-named Holland Building Association, its successors or assigns, the sum of One hundred thousand dollars with interest thereon at six per cent. per annum from the date hereof, payable half-yearly on the first days of February and August in each year, the first payment to be made August 1st, 1891, said sum of One hundred thousand dollars, and interest aforesaid to be realized and paid on or before January

25th, 1895, from the promissory notes of J. W. Coffin, Coffin & Co., Moritz Lippmann, and Coffin & Lippmann with the collateral hereto which Holland Building Association has purchased from Holland Trust Company, then the above obligation to be void, otherwise to remain in full force and virtue."

As a result of this transaction, the building association had no assets whatever, except such bond and mortgage and the Brigantine securities, which were stocks and bonds issued by companies organized to develop an island known as "Brigantine Island," in the state of New Jersey. No interest had been paid on these loans for over a year prior to their transfer. Therefore the building association was, as regards the subject of the collateral to the Brigantine loans, in the position of dealing with matters beyond its chartered rights.

There is some confusion as to the price agreed to be paid the association for 33 Nassau street. The deed fixes the sum at $135,000, and the conveyance was subject to the Stuart mortgage. The resolution of March 12th states that the Brigantine loans and collateral shall be accepted "instead of $100,000 cash," with the trust company's bond and unrecorded mortgage for $100,000 as collateral, but with privilege to the trust company to buy back "at any time" the Brigantine loans and collateral for $100,000 cash, on payment of unpaid dividends; the trust company meantime being entitled to the "dividends, income, and profits" on the Brigantine "matters." But the subsequent resolution of March 21st provided that the Brigantine securities, together with a mortgage for $100,000 on 33 Nassau street as collateral, be accepted "in full payment for said premises." The bond acknowledged March 31st was conditioned for the payment of $100,000, with semi-annual interest; "said sum * * * and interest aforesaid to be realized and paid on or before January 25th, 1895, from the promissory notes of J. W. Coffin and Coffin & Lippmann with the collateral hereto which Holland Building Association has purchased from Holland Trust Company." The mortgage recites indebtedness to the amount of $100,000 by the trust company, and undertakes to recite the condition of the bond, and the mortgagor covenants to pay the indebtedness.

The agreement, as gathered from the resolutions and bond and mortgage, seems to be that the association should accept the Brigantine securities for 33 Nassau street, and that on or before January 25, 1895, it should realize $100,000 and interest thereon from them, and that the trust company would assure the receipt thereof. According to this, the property was sold for the Brigantine securities, whatever their value, and an assurance of $100,000 and interest, on or before the date fixed. The Brigantine securities, in themselves, were at the time practically worthless, but the bond and mortgage furnished a consideration to the extent of $100,000 and interest.

The first question relates to the sufficiency of the price. There was a very close relation between the Holland Trust Company and the building association. From 1890 to 1894, Robert B. Roosevelt was a trustee, member of the executive committee, and president of the Holland Building Association, and was at the same time trustee, member of the executive committee, and until July, 1892, president of the trust company. J. W. Van Siclen was, until the latter part of 1892, sec-

retary, member of the executive committee, and a trustee of both companies. He was succeeded as secretary of both companies by Van Woert, who was at the same time a trustee of both companies, and a member of the executive committee of the trust company. Until 1893 the executive committee of the building association was composed of Roosevelt and Van Siclen, and such committee was empowered by resolution of the trustees passed January 15, 1890, "to transact all business for the association till the by-laws shall be adopted." At the same meeting, Roosevelt and Van Siclen were appointed a committee to draft by-laws for the association, but none were ever proposed or adopted. All the trustees and officers of the building association were trustees or officers, or both, of the trust company. The building association was organized for the specific purpose of buying 33 Nassau street, and for leasing and finally selling the same to the Holland Trust Company, and the terms of the stock subscription specifically show the plan which was to be followed in this regard. Among other things, it provides:

"The undersigned hereby severally subscribe the amount set opposite each name respectively for the capital stock of the Holland Building Association, for the purpose of buying No. 33 Nassau St. for $175,000 and improving the same, and leasing the same to Holland Trust Company for five years, to pay a rent of five per cent. net dividend upon the stock above all expenses, taxes and disbursements of every kind, Holland Trust Company through its Executive Committee having agreed to purchase said premises from said Building Association, within the term of said lease, at a price that will pay par and one per cent. profit for every year or portion of a year elapsing before such purchase. The capital stock of said Building Association to be either $125,000 or $100,000; per $100 per share; the premises being subject to a mortgage of $82,500 at the time of purchase."

It is probable that No. 33 Nassau street was at the time of its sale to the trust company worth somewhat more than $100,000 and the Stuart mortgage thereon, but the conveyance of the property to the Holland Trust Company for the sum of $100,000, in view of the purposes of the building association, and the terms upon which the stock was subscribed, is not considered either as improvident or wrongful. But the Brigantine securities were of slight, if any, immediate value, of doubtful validity, and subject to the hazard of defenses for usury. They were of such a nature and value that they should not have received the approval of the State Bank Examiner. The Holland Trust Company was embarrassed financially, and the Brigantine securities were transferred to the building association for the purpose of affording relief to the trust company, and ridding it of assets at the time substantially worthless, which it was perilous for it to hold. There was nothing at the time in the history or condition of the property which was the subject of the Brigantine collateral to afford just expectation that the loans or securities would be valuable. All this was known to Roosevelt and his fellow trustees and officers who participated in the transfer. However, the bond and mortgage supplied any deficiency in the value of the Brigantine securities, and, had the bond and mortgage been allowed to continue, this suit would not be maintainable.

In January, 1894, the financial difficulties of the trust company constrained it to sell No. 33 Nassau street to the Bank of Commerce in

consideration of the sum of $137,500, over and above the Stuart mortgage. To enable the trust company to deliver the warranty deed of the property, subject to the Stuart mortgage, the defendant Roosevelt called a special meeting of the trustees of the building association on January 30, 1894; and a resolution, the original draft of which was in Roosevelt's handwriting, was presented:

"Whereas, a bond and mortgage were made by Holland Trust Co. to Holland Building Association dated March 16, 1891, to secure the collection of $100,000 upon certain securities assigned to Holland B. Ass'n by H. T. Co. upon the conveyance by the former to the latter of No. 33 Nassau street, and whereas it was resolved by H. B. Ass'n that such mortgage should not be recorded but only held to keep alive the claim for any deficiency agt. H. T. Co. that might by any possibility arise, and whereas H. T. Co. has agreed to sell the said No. 33 Nassau street and has assumed the payment to the stockholders of the H. B. Ass'n of the par value of their stock.

"Now therefore resolved that the aforesaid bond and mortgage be and the same hereby are cancelled, released and discharged and that the secretary and treasurer be directed to cancel the same.

"(Moved by Judge Van Hoesen or else no authorship to be mentioned.)

"Carried unanimously."

The words in parentheses were crossed out by pen marks. The minute book shows the adoption of the resolution, save the part stricken out as just stated. The trustees present were Roosevelt, Van Hoesen, Vermeule, and Van Woert.

Mr. Roosevelt had on January 29th produced the unrecorded mortgage, and, pursuant to the above resolution, it was canceled by the officers of the building association. It is attempted to justify this cancellation of the mortgage upon the ground that on April 4, 1891, Roosevelt, Van Siclen, and Van Nostrand, trustees, passed a resolution that the Brigantine loans should be called; that the Brigantine securities should be offered for sale at public auction, and the officers of the building association be authorized to bid, in their discretion, on behalf of the association. This sale was had April 7, 1891, and the Brigantine stocks and bonds were bid in for the association at the sum of $103,577. The chief purpose of the sale was to foreclose outstanding equities, and Roosevelt was privy to the arrangement to fix the prices at which the securities should be bid in. The bid was neither bona fide, in the sense that it illustrated the value of the securities sold; nor did it, and the purchase of the securities pursuant to it, pay the sum due the building association, or discharge the bond and mortgage. The sale left a deficiency on the Brigantine loans of some $35,803.19, with "700 shares Brig. Co. Trustees Stock Steel Rails, $20,967.50," unsold, and some unsuccessful effort was made thereafter by the building association to collect the deficiency. At the time the bond and mortgage were canceled there was owing the building association the sum of $100,000, although the trust company had from the time of the purchase furnished a sum sufficient to pay thereon a dividend of 6 per cent. on the stock, which was continued until the year 1902. None of the proceedings with reference to the conveyance of No. 33 Nassau street to the trust company, or the cancellation of the mortgage, were submitted to the stockholders of either company. In January, 1894, the Holland Trust Company had decided to go into liquidation, and such liquidation has been continuing until the present time. In

November, 1902, the bank superintendent levied an assessment of 51 per cent. on the stock of the trust company, and collected the sum of $255,000 to meet impairment of its capital. The trust company now owes debts in excess of the value of its remaining securities. If it had not had the advantage of No. 33 Nassau street, for which it in fact paid no consideration, and had it not been aided by a syndicate for the purpose of taking up one of its loans, Mr. Roosevelt being a large contributor to the funds of such syndicate, its financial embarrassment would have been more pronounced. The defendant Roosevelt was the most influential factor in both companies, and his wishes and judgment controlled his official associates. In conjunction with others, he planned the exchange of No. 33 Nassau street for the Brigantine securities, with the collateral bond and mortgage, and for the withholding of the mortgage from record, and for its final cancellation. He either executed the plan, or caused it to be executed. Roosevelt owned 382 shares of the stock of the Holland Trust Company, and members of his immediate family owned 136 shares—a total of 518 shares, representing $103,600. The capital stock of the trust company was $500,000. Roosevelt held 25 shares of the building association stock. Brinckerhoff was an original stockholder of the building association, and so continued. He did not know, nor have notice, of the terms of sale of No. 33 Nassau street, and the cancellation of the bond and mortgage; nor was there any event that should have put him on inquiry as to the disposition of the bond and mortgage until the payment of the dividend in 1902 failed. He thereupon acted with suitable promptness. Due demand was made upon the building association to bring this action, which it declined to do. The facts are neither intricate nor doubtful. Roosevelt may be exculpated with reference to the primary transaction, whereby No. 33 Nassau street was conveyed to the trust company, but should not be excused for his participation in the cancellation of the bond and mortgage. As to that, he and his associates were guilty of culpable negligence, and thereby a sacrifice of important property of the corporation was suffered. Mr. Roosevelt may have considered that his official influence in both companies would enable him to provide for full payment to the association, but the event illustrates the insecurity of such a project. His act aided to take away the association's only legal and valuable asset, and left it without the only security on which there was any reasonable dependence, and which furnished a full and immediate remedy in case of default.

But the counsel for Roosevelt now urgently contend that there was no liability existing at the time the bond and mortgage were canceled, and that the building association had received all that was its due, because the Brigantine collateral had been foreclosed and sold at the sum stated, although the Holland Trust Company continued to pay 6 per cent. dividend until 1902. If that effect be claimed for it, then the public sale of the Brigantine stock should be denounced as a fraud upon the stockholders of the association, inasmuch as there was no bona fide sale of the same at the price bid. If, however, the sale of the Brigantine collateral was for the purpose of foreclosing equities, it was justified. A rightful act should not be deemed to have

131 F.—61

been done for wronging the association, and is not so construed. Although there was no formal agreement between the two companies, the trust company paid in all $69,000 for the purpose of meeting the interest secured by the bond and mortgage.

The complainant has not been guilty of laches, nor is the suit barred by the statute of limitations. The loss to the association arises from the fact that the bond and mortgage were canceled. This it has been said was brought about by the unauthorized and negligent act of Roosevelt and his associates. For this he should make restitution. It is considered that the $3,900 taken from the building association and transferred to the trust company in 1891 was without any consideration or justification, and for this he should account.

The defendant is understood to urge that resort cannot be had to Roosevelt, inasmuch as the trust company is liable upon its guaranty. Where now the guaranty resides does not appear. The argument would be this: Roosevelt has wrongfully deprived the association of collateral which it could have enforced, without first exhausting its remedy, if any it had, against the trust company. But in the interest of the wrongdoer, remedy against him should be deferred until the remedy against the trust company shall have been exhausted. If such a rule were adopted, a creditor would be deprived of rights, through a tort, which it could have exercised if the tort had not been committed. The bond and mortgage and the $3,900 have been lost to the association. His act aided the loss. He should restore all. But as he cannot re-establish the bond and mortgage, he should give the association an equivalent in value for that of which he has aided to deprive it.

The complainant urges that payment should be made to a receiver, inasmuch as some of the parties who participated in the unlawful acts are trustees of the building association. As to that, all parties will be heard. However, it is stated that no person who voted to cancel the bond and mortgage should be allowed to participate in any relief afforded by the decree herein.

The defendant Roosevelt should account to the Holland Building Association, or to a receiver, for the sum of $103,900, with 6 per cent. interest on $100,000 from the date of the payment of the last dividend by the trust company, and interest on $3,900 from the time it was transferred, together with such costs, disbursements, and counsel fees as shall be hereafter taxed and allowed by the court.

The foregoing views would not allow the association to retain the Brigantine securities, and yet receive the guarantied sum of $100,-000 from Roosevelt. To the extent that they have value, Roosevelt should have the benefit thereof. The parties will be heard as to the decree in this regard.