## BRINCKERHOFF v. HOLLAND TRUST CO. et al.

### ROOSEVELT et al. v. BRYANT et al.

(Circuit Court, S. D. New York. February 5, 1908.)

1. EQUITY—PARTIES—INTERVENTION.

In a suit by a stockholder against the corporation and another to set aside a transaction between the defendants by which the corporation disposed of property, on the ground of fraud and the gross negligence of its president and directors, such president, although not made a party, may

properly be permitted to intervene and file a cross-bill meeting and controverting the allegations of the bill.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 275–279.]

2. SUBROGATION—NEGLIGENCE OF AGENT—REIMBURSEMENT OF PRINCIPAL FOR LOSS—SUBROGATION OF AGENT.

An agent who is negligent in the management of the property of his principal and who is compelled to reimburse him will nevertheless be subrogated to the rights of the principal against the one primarily causing the loss, unless he was not merely negligent, but his conduct was such that he is not entitled to the consideration of a court of equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Subrogation, § 4.]

3. JUDGMENT—PERSONS CONCLUDED—CORPORATIONS AND STOCKHOLDERS—JUDGMENT AS BAR.

A building association conveyed certain real estate which constituted all of its property to a trust company, receiving in payment certain notes and securities pledged therefor, but also taking a mortgage on the property sold to guaranty the collection of the notes. This mortgage by agreement was not recorded, and was afterward canceled pursuant to a resolution of the board of directors of the association, not authorized by the stockholders, on the unsecured agreement of the trust company to pay to the stockholders of the association the par value of their stock. The trust company became insolvent, not having complied with such agreement, and, the association failing to realize on the notes and securities which it still held, a stockholder brought suit on behalf of himself and all other stockholders against the president, who was also a director and also president of the trust company, and recovered a decree against him for the consideration agreed to be paid by the trust company for the property, on the ground of the negligence of the defendant and the other directors in canceling the mortgage, which decree the defendant paid. At the time of such decree the securities held by the association were in the hands of receivers appointed in a suit brought by the same stockholder against the trust company in another jurisdiction, and the decree made no provision in respect to the same. *Held*, that such decree was not an adjudication of the right to such securities as between the defendant after payment of the decree and the trust company which was not a party to the suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1226.]

4. SUBROGATION—GROUNDS—SUFFICIENCY OF PLEADING.

The defendant in such suit on payment of the decree was properly permitted to intervene in the suit against the trust company, and by cross-bill assert his right to be subrogated to the right of the trust company to the securities, which the latter as against the association was entitled to have returned, and his cross-bill showed a right to such subrogation as against both the trust company and its creditors, who received the benefit of the property received in exchange for the securities, where it alleged that his conduct in the transaction was not fraudulent, but merely negligent, and that neither he nor any other of the officers or directors of either company personally profited thereby.

See 146 Fed. 203.

Hearing on plea of defendants Samuel Bryant and James B. Van Woert, as receivers of Holland Trust Company, to part of a bill of revivor and supplement filed by John E. Roosevelt, Robert B. Roosevelt, and Kenyon Fortescue, as executors, etc., of Robert B. Roosevelt, deceased, and also to a part of the cross-bill filed herein by Robert B. Roosevelt in his lifetime, and also on plea of Holland Building Association to such bills. Also, hearing on motion by Holland Trust Company for withdrawal and vacatur by this court of the permission granted to Robert B. Roosevelt in his lifetime and to his executors, after his death, to intervene in the original cause and answer and file a cross-bill.

Wellman, Gooch & Smyth (Herbert C. Smyth and Frederic C. Scofield, of counsel), for complainants Roosevelt and others.

George M. Van Hoesen, for receiver of Holland Trust Co.

Tunis G. Bergen, for Holland Building Ass'n.

RAY, District Judge. From the papers before me it appears that in September, 1902, one Elbert A. Brinckerhoff, on behalf of himself and all other stockholders of the Holland Building Association, filed his bill in equity in the Circuit Court of the Eastern District of New York against Robert B. Roosevelt and the Holland Building Association, charging the said Roosevelt as an officer of said Holland Building Association with certain wrongful conduct, etc., injurious to such association and its stockholders, and seeking to charge him with certain sums of money as compensation, etc. The particulars will be referred to hereafter.

This action was tried before Hon. Edward B. Thomas, then District Judge of the Eastern District of New York, and, on the facts found by him (see [C. C.] 131 Fed. 955), resulted in a decree in favor of the complainant as follows:

"Ordered, adjudged, and decreed, as follows: That the defendant Robert B. Roosevelt without authority and negligently proposed, voted for, and procured the cancellation of the bond and mortgage for $100,000 made by the Holland Trust Company to the Holland Building Association without causing or procuring payment to be made to the Holland Building Association of the sum due under said bond and mortgage: that there has been a breach of the condition of the bond and mortgage whereby the mortgagee was entitled to enforce payment of the sum secured thereby which on account of the worthlessness of the consideration transferred to the Holland Building Association by the Holland Trust Company in return for 33 Nassau street consisting of all the indebtedness due the Holland Trust Company from Brigantine Beach Railroad, Brigantine Company, J. W. Coffin & Co., Moritz Lippmann, Coffin & Lippmann and their kindred companies at Brigantine Beach, with all the collateral belonging thereto, was $100,000 and interest, so far as the same is unpaid; and the Holland Building Association has thereby suffered loss to the extent of $100,000 with all unpaid interest thereon as hereinafter set forth; and that the defendant Roosevelt should pay for the benefit of the Holland Building Association the said sum of $100,000 with interest from August 1, 1901, as hereinafter provided. That the said defendant Robert B. Roosevelt without authority and negligently voted for and participated in the transfer to the Holland Trust Company of the sum of $3,900.81 belonging to the Holland Building Association; that such payment was unlawful and without consideration, and that said Roosevelt should pay for the benefit of the Holland Building Association the sum of $3,900.81 with interest from the 21st day of March, 1891, as hereinafter provided.

"It is further ordered, adjudged, and decreed that the defendant Robert B. Roosevelt pay to the Franklin Trust Company of the borough of Brooklyn, which is hereby appointed receiver for the purpose of receiving and administering the fund to be realized from this suit as hereinafter provided, the aforesaid sum of $100,000 with interest thereon from the first day of August, 1901, and the aforesaid sum of $3,900.81, with interest thereon from the 21st day of March, 1891, together with the sum of $1,398.39 as taxable costs, to be taxed by the clerk of this court and inserted in this decree; but if at said time a certain judgment obtained by the defendant Roosevelt against the defendant the Holland Building Association in the Supreme Court of the state of New York, county of New York, and docketed on the 18th day of April, 1902, for $7,477.18, remains in force, and if the said Roosevelt then tender to the Franklin Trust Company a satisfaction piece and discharge of said judgment, the said satisfaction piece and discharge shall be accepted by the Frank-

lin Trust Company as part payment of the sums above decreed to be paid by the said Roosevelt to said Franklin Trust Company, and the said Roosevelt shall be required to pay in cash to said Franklin Trust Company only the balance of the sum above decreed to be paid by him to said Franklin Trust Company after deducting therefrom the sum necessary to discharge the above-mentioned judgment in full with interest.

"It is further ordered, adjudged, and decreed that the said Franklin Trust Company collect and receive the sums above stated; and that upon the delivery to the defendant Roosevelt of such of the Brigantine securities originally transferred by the Holland Trust Company to the Holland Building Association in March, 1891, as are now held by said building association, and also all the securities subsequently received and now held by the Holland Building Association in place of securities originally transferred by the Holland Trust Company to the Holland Building Association in March, 1891, to wit, 50 shares of the stock of the Brigantine Building & Improvement Association, transferred to the Holland Building Association in March, 1891, and 800 shares of stock of the Brigantine Beach Railroad Company transferred to the Holland Building Association in March, 1891, together with 260 shares of preferred stock and 260 shares of common stock of the Philadelphia & Brigantine Railroad Company received by the Holland Building Association upon the reorganization of the Brigantine Beach Railroad Company in place of 71 bonds of $1,000 each of the Brigantine Beach Railroad Company transferred to the Holland Building Association in March, 1891, and, upon the delivery to the defendant Roosevelt of a duly executed assignment of the aforesaid securities, the said Franklin Trust Company shall distribute the money so received from the defendant Roosevelt as follows:

"First, that it pay to Duncan & Duncan, solicitors and counsel for complainants, the sum of twenty thousand dollars to be retained to said solicitors and counsel as reasonable compensation for their services as solicitors and counsel, and that it pay to said solicitors to meet the disbursements incurred on behalf of the complainants the sum of $1,398.39 taxable costs above referred to; that it also pay to Tunis G. Bergen, solicitor and counsel for defendant the Holland Building Association, one thousand dollars as reasonable compensation for his services herein as such solicitor and counsel; second, that said receiver pay and discharge the above-mentioned judgment obtained against said Holland Building Association by the defendant Robert B. Roosevelt in the Supreme Court, state of New York, county of New York, and docketed on the 18th day of April, 1902, for $7,477.18, if the same be in force, unless a satisfaction piece thereof shall have been tendered to said receiver by the defendant Roosevelt, and an allowance made to said defendant therefor as above provided; third, out of the balance of said sum said receiver is directed to retain the expenses of said receivership, including the sum of two hundred and fifty dollars, which is hereby fixed as the compensation of said receiver for carrying out its duties herein provided for; and, further, the Holland Building Association by its solicitor and counsel having consented to this provision of this decree, it is further ordered that the said receiver distribute the balance of said money so received from said Roosevelt, together with interest accrued thereon at the usual rate allowed by said trust company, among the then stockholders of the defendant the Holland Building Association pro rata according to their respective holdings of stock in said corporation in accordance with the stock record books of the Holland Building Association which the receiver is hereby directed to consult for the purpose of obtaining therefrom a correct list of said stockholders of record at the time of the delivery to the defendant Roosevelt of the Brigantine securities as aforesaid.

"And it is further ordered, adjudged, and decreed that upon the said receiver qualifying as hereinbefore provided it recover of said defendant Roosevelt the said sum of $100,000 with interest from the first day of August, 1901, and a further sum of $3,900.81 with interest from the 21st day of March, 1891, together with the sum of $1,398.39 taxable costs, amounting in all to the sum of $127,984.86 less, however, the amount necessary to satisfy and discharge the above-mentioned judgment obtained by the defendant Roosevelt against the Holland Building Association in the Supreme Court of the state of New York, county of New York in case the defendant Roosevelt tender to the said

receiver a satisfaction piece of said judgment as above provided; and that, as said receiver, the Franklin Trust Company have execution against the defendant Robert B. Roosevelt for the sums decreed to be paid by said defendant, unless due payment be made within thirty days.

"It is further ordered and decreed that either party hereto may apply to this court for further orders and directions at the foot of this decree as may seem necessary or proper for carrying out the purpose of this decree.

"Edward B. Thomas, U. S. J.

"It is hereby consented that the foregoing decree be amended by inserting on page 3 line 28 after '1891' the words and figures 3510 shares of the capital stock of the Brigantine Company of New Jersey transferred to the Holland Building Association in March, 1891.

"Duncan & Duncan, Solicitors for Complainant.
"Geo. C. Kobbe, Solicitor for R. B. Roosevelt.
"So ordered, Nov. 5, 1904.
"Edward B. Thomas, U. S. J."

On appeal to the Circuit Court of Appeals, Second Circuit, it appeared that the Brigantine securities referred to in such decree were in the possession of a receiver appointed by the United States Circuit Court, Southern District of New York, in a suit brought by the same complainant against the Holland Trust Company and the Holland Building Association, and which is the same action in which these proceedings are pending and being had, and thereupon the decree of the Circuit Court was affirmed, with suggestions of a modification or modifications, in that it was impracticable if not impossible for the building association to deliver the Brigantine securities to Roosevelt. Thereupon, on the coming down of the mandate of the Circuit Court of Appeals, the Circuit Court made the following amendment and modification, viz.:

"Ordered, adjudged and decreed that the decree of this court entered herein on the first day of November, 1904, and amended by the order of November 5, 1904, be, and the same is, modified and amended by striking out all portions thereof requiring or relating to the delivery or assignment of the Brigantine securities to the defendant or to the Franklin Trust Company, without prejudice to an application by defendant, upon satisfying this decree, to be subrogated in the suit pending in the United States Circuit Court for the Southern District of New York instituted by complainant herein against the Holland Trust Company, and the complainant herein is hereby enjoined from proceeding in such suit, or further taking any proceedings in such suit, until the defendant shall have reasonable opportunity to make such application."

In all other respects the decree was affirmed and made the final decree of the Circuit Court.

It seems that the Building Association became the owner of 33 Nassau street February 1, 1890, for $92,500, taking title subject to a mortgage of $82,500, held by one Stuart. March 18, 1891, Roosevelt, as president, and one Van Sicklen, as secretary and treasurer, of said building association executed a deed thereof to the Holland Trust Company, and they, as president and secretary, etc., of the trust company, also executed a mortgage to the building association, but this by agreement was never recorded. There was also transferred to the trust company $3,900.81 then belonging to the building association. There was transferred to the building association as consideration for the deed certain notes of the face value of $140,000. These were indorsed "without recourse. Holland Trust Company, R. B. Roosevelt, Presi-

dent." These notes accompanied by certain collateral are known as the "Brigantine securities." No authority for these transfers was given by the Holland Trust Company. March 12, 1891, at a meeting of certain of the trustees of the building association a resolution was adopted to accept the said Brigantine securities in lieu of cash for the said deed of 33 Nassau street, "provided Holland Trust Company guarantees the payment of $100,000 therefrom to this company, and also guarantees 6% per annum dividends on $100,000 to this company," etc., "with the privilege or call to said trust company to buy back said indebtedness and collateral act at any time for $100,000 cash," etc. The result of the transaction was that the association had parted with all its property and assets to the trust company for the unrecorded mortgage and the Brigantine securities, and became the owner thereof with certain conditions as to repurchase attached. These Brigantine securities were then practically worthless. Thereafter the unrecorded mortgage was canceled without payment, and the trust company sold and deeded the property 33 Nassau street, and received the full consideration. In the meantime the Brigantine loans were called, and the Brigantine securities were sold and bid in by the building association. This sale, etc., was to foreclose outstanding equities, and in no sense established any value in them. It left a deficiency of $35,803.19, with some 700 shares Brig. Co. Trustees' Stock Steel Rails, $20,967.50 unsold. The defendant Roosevelt took an active part in these transactions, and was largely responsible therefor, he being a principal officer in both the trust company and the building association. The court so held.

The long and the short of the story is that Robert B. Roosevelt was guilty of actionable negligence and culpable carelessness in managing the affairs of the building association, and in taking part in wasting the assets of the building association, and trading them off for these worthless notes and securities which became the only property of the trust company when the mortgage was canceled as aforesaid. In the meantime, and in January, 1903, said Brinckerhoff, on behalf of himself and all other stockholders of the Holland Building Association similarly situated, brought suit in equity in the Southern District of New York against the Holland Trust Company and the Holland Building Association, setting out at great length and with all necessary detail the transactions aforesaid; the negligent acts of Roosevelt and of the other officers, and alleging in substance that same was a fraud and a wrong on the building association; that the Brigantine securities and collateral, or others into which some of them had been converted, were in possession of the building association and capable of delivery to the Holland Trust Company, etc., and praying that the transaction be declared null and void and set aside; that the trust company account for and pay over the value of the property obtained by it, on restoration, if required by the court, of such Brigantine securities, etc. This in general is the object and purpose of this suit. It will be noticed that the complainant proceeds on the theory that if restitution is made to the building association the Brigantine securities should be returned.

In April, 1906, the final decree in the Eastern District having been entered, as amended March 20, 1906, Robert B. Roosevelt, one of the defendants in the action in the Eastern District, made a motion in this suit in the Southern District of New York to be allowed to come in and be made a party defendant, and to be allowed to intervene herein and to appear by his solicitor, and to file his cross-bill herein against said Brinckerhoff and against said Holland Trust Company and said Holland Building Association. The cross-bill was annexed to the order as finally amended, and granted May 24, 1906. This order was complied with; but thereafter said Robert B. Roosevelt died, and John E. Roosevelt, Robert B. Roosevelt, and Kenyon Fortescue were duly appointed executors of his last will and testament, and Samuel Bryant and James B. Van Woert having been duly appointed receivers of the Holland Trust Company, the said executors filed their cross-bill of revivor and supplement, and the said Samuel Bryant and James B. Van Woert, as receivers of Holland Trust Company, thereupon filed a plea to a part of the bill of revivor and supplement and to a part of said cross-bill filed by said Robert B. Roosevelt, and Holland Building Association also filed a plea to said bill of revivor and to said cross-bill. The executors aforesaid filed a replication to the answer of the receivers. The said receivers of the Holland Trust Company also now move to vacate the order of May 24, 1906, granted by his honor Judge Coxe, allowing the intervention and cross-bill of Robert B. Roosevelt, and the order allowing the bill of revivor and supplement. This motion should first be disposed of. That order of Judge Coxe was not appealed from, and has been acted upon by all the parties. No facts, not appearing before Judge Coxe, are presented. The status of the case is substantially the same now as then, so far as the merits are concerned. While Robert B. Roosevelt was not made a party defendant herein he is charged in the bill of complaint with gross negligence, working the great injury of an association of which he was president. I think Judge Coxe was clearly right in allowing him to come in and be made a party defendant, and in allowing him to file a cross-bill and meet and controvert the allegations of the bill. The proposed cross-bill was before Judge Coxe, and all the questions now raised on this motion were presumably considered and passed upon by him. I do not think it an abuse of the right given by the order of Judge Coxe. Again, I think the motion comes too late. The motion to vacate the order of May 24, 1906, and the order allowing the bill of revivor, is therefore denied.

The cross-bill of Robert B. Roosevelt alleges, with many other things, some of which would seem to be immaterial, that on the entry of the final decree in the suit in the Eastern District of New York he immediately paid the full amount directed to be paid with interest, some $127,984.86, and he claims that he is entitled to the Brigantine securities, so called, and their proceeds, if any, and those into which they or any of them have been changed. It is claimed that he was guilty of no intentional wrongdoing, and that he has not been adjudged guilty of any in such sense or degree as deprives

him of the right in a court of equity to have the property of the trust company transferred to the building association and received by it, through his negligent acts as an officer, in exchange for the property at 33 Nassau street, given to him, inasmuch as he has been adjudged to pay and has paid to the building association the value of the Nassau street property, and all the other property transferred at the same time by the building association to the trust company. It is claimed that as he, instead of the trust company, has made good the wrong done to and loss sustained by the building association through his negligent conduct as an officer, he is really "in the shoes" of the trust company, and, as it, on making good the loss, had it done so, was entitled to the Brigantine securities, he is now entitled thereto, and that the trust company, which has not restored anything and cannot now be called upon to restore anything, restoration having been made by Roosevelt, cannot, as against either Roosevelt or the building association, claim or hold the Brigantine securities. Also, that as the building association has been made good for all it parted with, it cannot hold or in equity claim to hold and retain such securities. The claim is, further, that in this suit, assuming the other had not been tried, should it be tried and adjudged that the transaction was fraudulent and for that reason should be set aside, and a decree made that the transfers be set aside and that the trust company restore 33 Nassau street, or its value and interest, and also the other property, it would be and should be on condition that the building association restore the Brigantine securities, the property received by it, inasmuch as both companies, as such, by their officers, participated in the transaction and knew and assented to all the details thereof. It is asserted that as this must be or should be the decree in this suit, if the complainant prevails, that Roosevelt (now his executors) has the right to show that he has been adjudged and decreed to make the building association good because of his participation in the transaction and that he has done so, in fact has made full restoration, and that therefore he (now his estate) is entitled to the said securities; that it is within the power of a court of equity having cognizance of the whole matter to direct and adjudge that such securities be returned and that they be returned to him; that having been compelled to meet the obligation of another, the trust company, he is entitled to the benefit of the doctrine of equitable subrogation; and that he is entitled to a decree in this suit for the return, or, rather, the turning over to him of such Brigantine securities. It is asserted that such a decree absolute must be based on a fact which did not appear and which could not appear in the suit in the Eastern District of New York, viz., that Roosevelt has actually made restitution to the Holland Building Association, and was compelled so to do, and, moreover, that such a decree lawfully could not have been made in that suit inasmuch as the Holland Trust Company is interested in this question, and was not a necessary party to that suit where the questions of the restoration of such securities and of subrogation were not necessarily involved, while here Roosevelt (now his executors), who has made restitution, but who received no benefit from the transaction, and both

the building association, which has the securities, and the trust company, which, as against the building association, is entitled to the securities, restitution having been made by one of its officers, are all parties present in court, and the object and purpose of the suit is to set aside the transaction and transfer, and secure or bring about a return to it of the property taken from the building association, or its proceeds, on doing equity in such manner as the court may direct. It would seem very clear that if the trust company were now in possession of the real estate and other property received by it from the building association, the court would decree on the showing made, assuming the finding of the court to be the same as in the Eastern District, that the transaction be set aside as fraudulent as to the building association, and that the trust company reconvey the property and restore the money or other assets received, on condition that the building association restore the Brigantine securities. Clearly the building association could not recover the property which its officers knowingly and designedly parted with without restoring that which its officers knowingly and designedly received in exchange therefor. The acts of Robert B. Roosevelt were not individual acts, but acts negligently done by him as an officer of the building association in connection with and aided by the other officers, all of which acts were knowingly assented to and participated in by the officers of the trust company. The building association has had its property, or its full equivalent restored, not by the trust company, for it was insolvent and had parted with the property received, and applied the proceeds to the payment of its obligations, but by one of its officers from his own funds. The building association, on its part, has not restored or returned the consideration received by it. Clearly, in good conscience it is not entitled to retain that property. It cannot profit by its own wrong or negligence, nor should its stockholders. These securities belonged to the trust company when transferred to the building association, and, if the transaction is declared null and void and set aside, the securities, prima facie, belong to the trust company and not to Roosevelt (now his executors), and would be returned to it however great the wrong of its officers in the transaction. But Roosevelt, one of its officers, having by compulsion made the restitution, says that, in equity, he, not the trust company, is now entitled to these securities. I think he is; but the question cannot now be finally decided as the court should have all facts before it on a full hearing. Roosevelt did not profit from the transaction complained of. In doing what he did he was attempting to aid the trust company with its full knowledge and assent as to every detail. That company had the property and its proceeds, and the proceeds went, personally, to its creditors. The cross-bill says none of it went to the officers.

And I do not think the suit and decree in the Eastern District is res adjudicata on all these questions. The Holland Trust Company was not a party there, and Roosevelt did not represent it, and the court could not properly have made a decree adjudicating the rights of the parties to these Brigantine securities especially as between the

Holland Trust Company and Robert B. Roosevelt. The decree in that suit is not res adjudicata that Roosevelt is not entitled to these Brigantine securities. If the Holland Trust Company had been a party to that suit, then possibly all the rights might have been determined. The Circuit Court finally decided not to adjudge a return of the Brigantine securities to Roosevelt as a condition of his making the building association good, for the reason it was not in position so to do and enforce its decree. Another court of concurrent power in another jurisdiction had taken possession of them, and was engaged in determining their final disposition. Into that suit has come Robert B. Roosevelt (now his executors), by permission of the court saying, "by reason of events which have occurred since this suit was commenced and after the suit in the Eastern District was tried and decided I am entitled to the Brigantine securities." Assuming the facts to be as Judge Thomas held them to be, adding the other facts, I think that in this suit, where the question of the ultimate right to these securities is directly involved, Roosevelt's executors are entitled thereto, and that the question is properly raised and presented here. Judge Thomas evidently took this view, and relegated Roosevelt to this court in this suit for an adjudication of his right to these securities, for he provided in the amendment to the original decree that his action in amending should be without prejudice to Roosevelt's right to do just what he has done, and what this court granted him permission to do.

Subrogation is "a remedy which equity seizes upon in order to accomplish what is just and fair between the parties, when the party seeking the aid of the court and the benefit of the rule has been no mere volunteer, and when his action is based upon general equitable rules which it is the peculiar province of a court of equity to enforce." Peckham, J., in Pease v. Egan, 131 N. Y. 273, 30 N. E. 102. In Sheldon on Subrogation, § 11, it is said, and this has frequently been quoted with approval:

"The doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another, is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnity from the fund out of which should have been made the payment which he has made to the creditor. It is a mode which equity adopts to compel the ultimate discharge of a debt by him who in equity and good conscience ought to pay it, and to relieve him whom only a creditor would ask to pay, although as between debtor and creditor the debt may be extinguished, yet, as between the person who has paid the debt and the other parties the debt is kept alive so far as may be necessary to preserve the securities."

In 6 Pomeroy's Eq. Jurisprudence (2 Pomeroy's Equitable Remedies) p. 1496, § 921, it is said:

"Coming also within the class of payments made in performance of a legal duty are payments made by parties where obligation is imposed, not directly by contract, but by operation of law. Payments by a stockholder in discharge of an individual liability for corporate debts, or by a partner for debts of the firm are within this class, and in both cases the party making the payment is entitled to subrogation."

See Redington v. Cornwell, 90 Cal. 49, 27 Pac. 40.

The defendant Roosevelt did not himself or with the other directors

or trustees appropriate the property of either company to their own use, or seek or derive any personal advantage or gain from the transaction. Hence they were not joint tort-feasors, or joint tort-feasors with either the trust company or the building association in any such sense as will preclude Roosevelt from invoking the doctrine of equitable subrogation as between himself and the trust company or its stockholders. These stockholders of the trust company have not suffered any loss, but on the other hand derived a gain to the extent of over $103,000. Roosevelt, by operation of law, was compelled to make this good, not because of any willful tort or wrong committed by him, not because he personally or in connection with others took any property and converted it to his or their use, but because he with others so negligently performed a duty to the building association that they all became individually and collectively responsible for the consequences of such negligence. All negligence sounds in tort, but there are differences in torts. Rigby v. United States, 188 U. S. 400, 407, 23 Sup. Ct. 468, 47 L. Ed. 519. In that case the court, per Mr. Justice Harlan, said, while holding that an action for negligence was one "sounding in tort" (see page 410 of 188 U. S., page 471 of 23 Sup. Ct., 47 L. Ed. 519):

"It thus appears that the court has steadily adhered to the general rule that, without its consent given in some act of Congress, the government is not liable to be sued for the torts, misconduct, misfeasances, or laches of its officers or employés."

Mr. Justice Harlan is not given to tautology, and hence his use of all these words, and the final holding that negligence "sounds in tort."

In Gilbert v. Finch et al., 173 N. Y. 455, 459, 461, 66 N. E. 133, 61 L. R. A. 807, 93 Am. St. Rep. 623, the directors and incorporators not only wasted the funds, etc., but they took the money and converted it to their own use, and hence became joint tort-feasors in such a sense and to such a degree that equity would not afford relief. Haight, J., in giving the opinion of the court more than once emphasizes this fact.

The ground of recovery against Roosevelt was negligence in managing the affairs of the building association. That association as an association was not a joint tort-feasor with Roosevelt, nor was the trust company. In Gilbert v. Finch, supra, Judge Haight well says (page 462 of 173 N. Y., page 134 of 66 N. E. [61 L. R. A. 807, 93 Am. St. Rep. 623]):

"Indeed, we had supposed the policy of the law to be to leave wrongdoers without aid in equity from the burdens of the position in which they have placed themselves. The rule is well settled that, as among themselves, equity would not compel contribution or enforce subrogation."

He cites Peck v. Ellis, 2 Johns. Ch. (N. Y.) 131; Miller v. Fenton, 11 Paige (N. Y.) 18; Thorp v. Amos, 1 Sandf. Ch. (N. Y.) 26, 34; Pierson v. Thompson, 1 Edw. Ch. (N. Y.) 212, 218, and other cases. But here, as already said, subrogation is not sought by one tort-feasor against another joint tort-feasor.

In Kolb v. National Surety Company, 176 N. Y. 233, 68 N. E. 247, the surety for one of several joint tort-feasors paid the whole of the

judgment, but it did not take an assignment. However, by an order of the court, it was subrogated to all the rights and securities of the judgment creditor under the judgment. One of the joint tort-feasors pending an appeal had agreed with the judgment creditor to pay a certain part of the judgment in any event in consideration of his release therefrom. It was held on several grounds that the surety company could recover on the agreement. Surely the surety company came into the case as surety for one of the tort-feasors and was in privity with him. It paid the whole judgment because its principal was liable therefor. Still, the court subrogated it to all the rights of the judgment creditor. Evidently the doctrine of equitable subrogation was applied to do justice notwithstanding the fact that the surety company voluntarily, as to liability, stood in the shoes of one of the joint tort-feasors.

In Drake v. Paige, 127 N. Y. 562, 28 N. E. 407, F. and P. were executors of one L., who devised one-fourth part of his real estate to F. There was a power of sale, etc. Certain moneys of the estate came into the hands of the executors, and this was turned over to F. who desired to misappropriate same, and who did misappropriate same to his own use. This was all done with the knowledge of P. In reality he assented to the devastavit. F. mortgaged his interest in the property to one Drake. P. claimed subrogation, and to be entitled to reimbursement from the share of P. as against Drake, having been held liable for the devastavit, and compelled to make same good. The Court of Appeals held (see page 574) that P. had an equity as against F., but that it was subordinate to that of Drake, the mortgagee. Here, again, is the doctrine recognized that equity will do equity even as between those guilty of a wrong each in some degree, but the one much more in the wrong than the other.

An agent who is negligent in the management of the property of his principal and who is compelled to reimburse him, nevertheless, will be subrogated to the rights of the principal against the one primarily causing the loss. Murrell v. Henry, 70 Ark. 161, 66 S. W. 647; Stoller v. Coates, 88 Mo. 514; Nichols v. Wadsworth, 40 Minn. 547, 42 N. W. 541; Hough v. Etna Life Ins. Co., 57 Ill. 318, 11 Am. Rep. 18. So a fire insurance company bound by its policy to make good a loss caused by a fire resulting from the negligence of a third party is entitled to be subrogated to the rights of the insured against the negligent party. Hart v. Western R. R. Co., 13 Metc. (Mass.) 99, 46 Am. Dec. 719. See, also, 2 Pom. Eq. Rem. § 921, p. 1495. It is unnecessary to cite cases holding that the doctrine of subrogation does not necessarily rest upon contract express or implied. Says Peckham, J., in Pease v. Egan, 131 N. Y. page 273, 30 N. E. page 105:

"In the cases of Gans v. Thieme, 93 N. Y. 225, and Arnold v. Green, 116 N. Y. 566, 23 N. E. 1, while not particularly in point here, are yet evidences of the rule that no contract need subsist upon which to base the right of subrogation."

The cross-bill of Roosevelt alleges that at the time the directors of the Holland Building Association passed the resolution of January 30, 1894, pursuant to which the unrecorded mortgage on 33 Nassau street was canceled, it was recited therein, among other things, "whereas,

Holland Trust Company has agreed to sell the said No. 33 Nassau street, and has assumed the payment to the stockholders of the Holland Building Association of the par value of their stock," now "therefore, resolved that said bond and mortgage be and the same are hereby canceled," etc.; that the Holland Trust Company had then duly agreed to assume and pay such stockholders the value of their stock as a consideration for such release and cancellation of the mortgage; that after the cancellation he learned to his surprise that the trust company had not adopted any formal resolution to the effect above stated, and requested that it be done or that the agreement in some form be put in writing, but was met with the statement that it would be a useless formality; that the duty of paying such stockholders was well understood, and would be lived up to and complied with; that it was lived up to and complied with by furnishing money to the building association with which the Holland Building Association paid dividends on its stock down to and including August, 1901, and by continuing down to that date to pay some of the stockholders as agreed, and paid $19,600 for stock to some of the stockholders, and in part performed its agreement; that it was then solvent and able to comply with such agreement; that the directors of the building association so voting for the resolution, containing the recitation above mentioned, were also trustees of the trust company, so that the trust company had full knowledge of the obligation assumed and incurred to the stockholders of the building association as consideration for the release of such mortgage. The cross-bill also alleges that the Holland Trust Company as a stockholder of the building association has received $19,600, of the sum paid in satisfaction of the said decree in the Eastern District. The relations of the building association and trust company, the amount of capital stock, etc., are also set out in full, and from the allegations it would appear that the association was a sort of subcompany, etc., to the trust company.

Assuming these allegations to be true it would seem that the trust company in consideration of the release became indebted to the building association or its stockholders to the amount of its capital stock and paid thereon at least $19,600, aside from dividends. If this indebtedness had been paid in full and accepted, it would seem the stockholders would have had no cause of complaint. The officers of the building association were certainly negligent in not obtaining the consideration or security therefor. The trust company became unable to pay, and because of the negligence each director became liable. Roosevelt was sued and held liable because of his negligence. He fully reimbursed the building association. In effect he paid the indebtedness of the trust company to the stockholders of the building association when he paid the judgment or satisfied the decree of the court in the Eastern District. Here, again, we have Roosevelt pleading facts which could not have been set up in the suit in the Eastern District, facts which, if true, give him equities against the trust company which had the real estate and its proceeds without paying anything therefor except the $19,600. Whether or not this agreement was made by the trust company is a question which could not have been adjudicated in

the suit in the Eastern District, as the trust company was not a party to that suit. These allegations of the cross-bill present a case where one party has in fact paid and been compelled to pay the debt of another party on the ground that he, as representing that party, was negligent in not obtaining payment or security for the payment of such debt. Roosevelt was an officer and an agent of the trust company. He with the other trustees represented it. He was also an officer of the building association, and he with its other officers represented it. Assuming that Roosevelt pleaded the agreement of the trust company to pay the stockholders of the building association; that payment was not made; that security for the payment was not obtained; that the trust company became insolvent; that the mortgage was discharged without payment or security or even a formal resolution of the trust company to pay the said stockholders—the decree of the Circuit Court of the Eastern District must have been the same because of the confessed negligence. And for reasons already stated that court could not have adjusted the equities between the trust company and Roosevelt in case of payment of the decree by him for the reason the trust company was not a party there, and it was not essential that it be brought in for any such purpose. Indeed, in view of the situation, I do not think that court at that stage would have entered on that inquiry by bringing in the trust company.

The decree in that suit is not res adjudicata. That suit did not directly or necessarily involve the questions presented here, but rather led up to them and made their presentation necessary and proper in some suit where the trust company was a party. Questions of contribution and subrogation properly arose after Roosevelt had been held liable, and after he had discharged the obligation. Now, the court is asked to pass on the rights of the parties here in view of what Roosevelt has been compelled to do and has done, not in view of what he might or might not do. The issues there were not the issues here. The cause of action there was negligence; the cause of action here is the right of equitable subrogation and contribution involving another party because of what the complainant in the cross-bill, defendant in that suit, was compelled to do by its decree in the way of satisfying a claim of the building association's stockholders for which the trust company was liable. It is claimed that the fact that Roosevelt and Brinckerhoff were stockholders in both the association and trust company made the trust company a party by representation, but this claim is without merit. No stockholder can speak for a corporation. The rules applicable are quite succinctly stated in 23 Cyc. 1527, 1528, as follows:

"Identity or Privity of Parties. A plea of former adjudication must aver that the parties are the same in the two suits, or allege facts which show that the relation of the pleader to the former action was such as to make the judgment conclusive in his favor, or that the party against whom the estoppel is alleged, if not directly a party to the former suit, was so connected with it in interest as to be bound by the result.

"Identity of Cause of Action. In pleading a former judgment in bar, it is necessary to show clearly and distinctly that the cause of action in the former suit is identical with that on which the present suit is based; and if the prior judgment is pleaded as a conclusive adjudication upon some point or question in issue, the plea must make it clearly appear that the same point or question

was actually litigated and decided in the former suit, or that it might have been litigated and determined under the issues in that suit."

This brings us to a consideration of the question whether or not the cross-bill presents grounds of relief as against the trust company. Assuming the allegations of the cross-bill to be true, as we must, as qualified by the allegations of the pleas and new matters therein set forth, the trust company became obligated to the building association and its stockholders. Through the negligence of Roosevelt and the other directors of the association this obligation and liability was not paid or secured to be paid. As a consequence, a cause of action arose in favor of the association enforceable at the suit of a stockholder against Roosevelt or Roosevelt and the other directors, the measure of damages being the value of certain real estate which had been lost to the association, but the consideration for which was the liability of the trust company referred to. It was so enforced, and Roosevelt by compulsion paid the said consideration which the trust company had agreed to pay for such real estate, but by way of damages for his negligence in not securing it when he ought to have done so. Can he look to the trust company? Having in effect paid the debt or satisfied the obligation of that company to the association by compulsion, is he entitled in equity to be subrogated to the rights and remedies of the association as against the trust company? It is said that he is not because he was a wrongdoer, and does not come into court with clean hands. He says that he acted in good faith; that he was not willfully negligent; that he committed no intentional wrong, and that in no event has it been adjudicated that he has as between himself and the trust company; that the trust company as such was not a tort-feasor; that he was not in any sense or to any degree that deprives him of the right to equitable relief; that as the trust company had the full value of the real estate in cash, and has not paid for it, and he has been compelled to do so, that he in equity is entitled to reimbursement from it; that this right is superior to rights of the creditors of the trust company, inasmuch as the creditors in due course have already had the value of the property he was compelled to pay for. The right of subrogation is not confined to cases of suretyship or contract. If one is compelled to pay the debt of another he is entitled to subrogation unless his conduct has been such that he is not entitled to the consideration of a court of equity. Cole v. Malcom, 66 N. Y. 363, 366; Arnold v. Green, 116 N. Y. 566, 571, 23 N. E. 1; Harris on Subrogation, § 1; Barnes v. Mott, 64 N. Y. 397, 401, 21 Am. Rep. 625; Smith v. Foran, 43 Conn. 244, 21 Am. Rep. 647; Stevens v. Goodenough, 26 Vt. 676.

I am of the opinion that in this suit Roosevelt's executors are entitled to show, if they can, that Roosevelt acted honestly and in good faith; that his negligence was not intentional; that he neither sought not received personal gain or advantage; that he intended to act for the best interests of both the companies; that he relied on the solvency of the trust company and its promise to pay all the stockholders of the building association the full value of their stock, etc.; and hence was not guilty of such wrong as disentitles him to the consideration of a court of equity. I am fully conscious of the rigid and wise rules that

he who comes into equity seeking subrogation must be willing and able to do equity, and must come with clean hands. German Bank v. U. S., 148 U. S. 573, 581, 13 Sup. Ct. 702, 37 L. Ed. 564; Guckenheimer v. Angevine, 81 N. Y. 394. But I do not think this rule closes the portals of the temples of justice to those who, although negligent, erred without design, or willfulness, or purpose to defraud, and who have made good the consequences of the error. Drake v. Paige, 127 N. Y. page 574, 28 N. E. 407. The right to subrogation and compensation from the trust company will depend largely on the character of Roosevelt's acts; on the character and degree of his negligence. It may appear so gross and bald as to amount to the intentional commission of a positive wrong, in which case equity would leave him and his estate where it found him, and refuse to grant his appeal for relief. But Judge Thomas who passed on the case in the Eastern District did not so regard his acts in so far as they were in question before him, and there is no suggestion in the opinion of the Circuit Court of Appeals that the decree of the court in the Eastern District was erroneous for the reason Roosevelt's conduct had been such that a decree for the delivery to him—a subrogation to the rights of the trust company of the Brigantine securities—was improper. Had his conduct been so regarded by that court, it could have and would have reversed so much of that decree as adjudged a delivery of such securities to Roosevelt as a condition of his reimbursing the building association. On the other hand, it suggested the impracticability of such return under the decree of the Circuit Court in the Eastern District inasmuch as the Circuit Court in the Southern District had possession of such securities, and suggested a modification which Judge Thomas accordingly made.

Accordingly the motion is denied, and the pleas are overruled, and defendants will answer within 15 days.