AMERICAN NURSING RESOURCES, INC., Plaintiff,

v.

FORREST T. JONES & CO., INC., Appellant,

v.

John P. RYAN, Jr., Respondent,

Antoinette S. Ryan, Respondent.

No. WD 42678.

Missouri Court of Appeals, Western District.

June 4, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied Sept. 10, 1991.

William L. Allinder and William G. Zimmerman, Kansas City, for appellant.

John Michael Cronan, Kansas City, for John P. Ryan.

Walter J. O'Toole, Jr., Kansas City, for Antoinette S. Ryan.

Before LOWENSTEIN, P.J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The cross-claimant Forrest T. Jones & Co., Inc. appeals the judgment entered on the verdict directed in favor of the defendants Ryan at the conclusion of the cross-claimant's case. The cross-claim is the remnant that remains of a pleading by American Nursing Resources as plaintiff to recover from the Ryans and their insurer the cost of nursing services furnished to Ms. Ryan.

The defendants John P. Ryan, Jr. and Antoinette S. Ryan, his mother, were insured under the Missouri Bar Major Medical Plan, a group policy of medical insurance issued by the New York Life Insurance Company. The cross-claimant Forrest T. Jones is the group administrator for the Plan issued by N.Y. Life. A written service agreement between them constitutes Jones as the agent for N.Y. Life for the payment of claims under the Plan. To pay claims under the service agreement Jones issues checks drawn on a N.Y. Life account. The agreement provides that Jones will indemnify N.Y. Life against loss resulting from its negligence in the administration of the Plan.

The defendant Antoinette Ryan, an insured under the Plan, was receiving home medical care. From January 1, 1986, through February 28, 1987, her son John Ryan was her agent as to matters of personal finances, medical treatment and insurance, and contracted with American Nursing Resources to provide the mother with that medical care. John Ryan, as her agent, also executed an assignment to American Nursing of benefits due the mother under the Plan. Notice of the assignment was received by Jones.

American Nursing provided nursing services under the agreement and assignment of benefits from March of 1986 to February of 1987. Jones processed the claims by American Nursing for the services rendered to Ms. Ryan and made payment under the assignment directly to American Nursing by checks drawn on the N.Y. Life account. Beginning in October of 1987, however, Jones failed to make payment on several claims submitted by American Nursing. Then, in January of 1988, without revocation of the assignment, Jones made remittance on many of the claims unpaid since October of 1987. These payments, however, were made directly to Ms. Ryan rather than to American Nursing. They were made by fourteen checks dated January 29, 1988, totaling $35,731.45, and drawn on the N.Y. Life account. Each check was accompanied by an "explanation of benefits" that it was in payment of

services rendered by American Nursing for the designated period.

John Ryan obtained the checks from his mother, had his secretary endorse her name to them and then deposit them into a bank account in the names of both John and Antoinette Ryan. The son then transferred $30,000 of the money to an investment account in his own name. The son invested the money in stock and commodity options, and the money was lost. The authority of the son to use these checks as he did was not admitted by Ms. Ryan.

American Nursing was not paid for the services for which the fourteen checks issued, and so brought this action against the mother and son Ryan and N.Y. Life as defendants. N.Y. Life cross-claimed against the defendants Ryan to recover the money paid to Ms. Ryan by Jones and retained by them. N.Y. Life also made demand upon Jones under the service agreement to defend the action and for indemnity for any loss occasioned by the issuance of the checks directly to Ms. Ryan. Jones then paid American Nursing $36,843.45 in settlement and dismissal of its claim and action against N.Y. Life. This payment was the full indemnity owed by Jones to N.Y. Life under their service agreement.

Jones then moved the court to be substituted for N.Y. Life as party cross-claimant against the defendants Ryan. The motion was allowed. The plaintiff American Nursing agreed that the $36,843.45 received in settlement with Jones and N.Y. Life be applied to reduce its claim of $42,562.35 against the defendants Ryan. The trial court severed the American Nursing claim against the Ryans from the Jones cross-claim against the Ryans, which proceeded to trial first. The court directed a verdict against the cross-claim at the conclusion of Jones' case, and entered judgment accordingly. Thereafter, the claim of plaintiff American Nursing against the defendant Antoinette Ryan was adjudicated by the court, and a judgment of $10,011.50 was entered for American Nursing.

The judgment in favor of the defendants Ryan on the cross-claim of substituted par-

ty Jones thereupon became final for purpose of appeal. That appeal, now before us, is what remains of the litigation.

The direction of a verdict was proper only if upon view of the evidence in the light most favorable to the non-moving party, reasonable minds could not differ as to the proper verdict. *Fricke v. Valley Prod. Credit Ass'n,* 721 S.W.2d 747, 752[1, 2] (Mo.App.1987). The facts already recited are given most favorably to the theory of the cross-claim, the right of Jones to have subrogation against the Ryans.

The declared ground of the directed verdict was that at the time Jones made the $36,843.45 payment to American Nursing, Jones was under no legal obligation to American Nursing as to any debt, so that the payment was made as a volunteer. The court reasoned that under the terms of the Plan, the contractual obligation of N.Y. Life was to pay the medical benefits to Ryan. That payment was made, and thereafter N.Y. Life never "ha[d] to pay more than they were legally obligated to pay under the contract of insurance." The court reasoned also that the obligation for indemnity by Jones to N.Y. Life for negligent payment never came into operation because N.Y. Life paid any benefits due under the Plan only once, so that there was no loss to indemnify. Thus, Jones paid no debt for which N.Y. Life was answerable and there was no right of N.Y. Life against the Ryans to which Jones could succeed by subrogation.

## I. The Right to Subrogation

◼ Subrogation simply means the substitution of another person in the place of the creditor, so that the person in whose favor subrogation is exercised succeeds to the right of the creditor in relation to the debt. *State Sav. Trust Co. v. Spencer,* 201 S.W. 967, 969[1] (Mo.App.1918). It is the mechanism whereby the equity of restitution of one person is worked out through the legal rights of another. D. Dodds, *Remedies* § 4.3, p. 251 (1973); *Kroeker v. State Farm Mut. Auto. Ins. Co.,* 466 S.W.2d 105, 110[2–4] (Mo.App.1971). The right of subrogation accrues to a person who has paid the debt or obligation for which another is primarily responsible. 73 Am.Jur.2d *Subrogation* § 26 (1974). The person who claims subrogation, however, must have acted to make the payment under the compulsion of a legal liability or to protect some other interest. *Cole v. Morris,* 409 S.W.2d 668, 670[2] (Mo.1966); *Quality Wood Chips, Inc. v. Adolphsen,* 636 S.W.2d 94, 97[1] (Mo.App.1982). A person who intervenes to pay a debt for which another is primarily responsible, but officiously and without legitimate reason, acts as a volunteer and is not entitled to be subrogated to the position of the creditor. *Loman v. Harrelson,* 437 S.W.2d 123, 126[2, 3] (Mo.App.1968); *Frago v. Sage,* 737 S.W.2d 482, 483[1–5] (Mo.App.1987).

◼ The trial court determined from the evidence presented during the case-in-chief, that Jones did not prove that the payment made to American Nursing was to protect an interest or compelled by legal obligation, and so directed a verdict against the cross-claim for subrogation. The premise of the adjudication was that N.Y. Life paid no more than it was "legally obligated to pay under the contract" so that, as a substituted party, Jones had no more ground for subrogation that did N.Y. Life. The train of reasons that led the court to determine that Jones acted without legitimate occasion, and so as a volunteer, falters on the assumption that the legal obligation of N.Y. Life under the Plan was to pay the benefits to Antoinette Ryan, and then goes astray by the neglect of the evidence of the assignment of those benefits to American Nursing.

The son as agent for the mother, Antoinette Ryan, contracted with American Nursing to provide her with medical care, and executed an assignment to the health care provider of the benefits due the mother under the Plan. In the course of the declaration of judgment, the trial court assumed the validity of the assignment. There is no dispute of that evidence as fact, and we assume it as found on this review. We also assume as an intendment of the evidence that the notice to the agent Jones of

the assignment was also notice to the principal N.Y. Life.

An assignment is a contract between the assignor [Ms. Ryan] and an assignee [American Nursing], and upon notice of the assignment, the obligor [N.Y. Life] must pay the proceeds due under the policy to the assignee [American Nursing]. *State v. Glenn,* 423 S.W.2d 770, 774[4] (Mo.1968); *National Life & Accident Ins. Co. v. Magers,* 319 S.W.2d 53, 56[3, 4] (Mo. App.1958), *transferred,* 329 S.W.2d 752 (Mo. banc 1959). The effect of the assignment by Ms. Ryan to American Nursing was to divest all rights to the benefits accrued to her favor under the N.Y. Life policy for the cost of the treatment by that health care provider, and to invest those same rights in American Nursing. *Kroeker v. State Farm Mut. Auto. Ins. Co.,* 466 S.W.2d at 110[5]. The effect of the notice of the assignment was to give rise to a duty by the debtor N.Y. Life to pay the policy benefits to the assignee American Nursing only, so that payment to anyone other than the assignee was at the debtor's peril. *Ferguson v. Davidson,* 147 Mo. 664, 49 S.W. 859, 861[2] (1899); 6A C.J.S. *Assignments* § 87 (1975).

The obligation that bound N.Y. Life was to pay the benefits due under the Plan to American Nursing in whom that right of property was vested by the terms of the assignment. Antoinette Ryan was not entitled to those benefits, and payment to her did not discharge N.Y. Life's obligation to American Nursing. The premise of the judgment notwithstanding, the primary liability owed by N.Y. Life under the policy was not met by payment of the benefits to Antoinette Ryan, and the payment of that debt by Jones was more than the gesture of a volunteer. It discharged a debt for which N.Y. Life was primarily responsible, and so entitled Jones to succeed to the rights of N.Y. Life in relation to that debt. *State Sav. Trust Co. v. Spencer,* 201 S.W. at 969[1]; D. Dobbs, *Remedies* § 4.3, p. 251 (1973).

Ryan argues nevertheless[1] that Jones acted as a volunteer because "it had no obligation to pay the money to New York Life Insurance Company by reason of the conduct of Antoinette or John Ryan." The argument is that Jones acted as a volunteer in the payment of the benefits to Antoinette Ryan and acted as a volunteer again in the payment of the benefits to American Nursing. The money was paid by Jones to Ryan as agent of N.Y. Life despite notice of the subsistent assignment of that property by Ryan to American Nursing. It was done negligently and by mistake. Jones was under obligation to N.Y. Life under the terms of the service agreement between them to indemnify N.Y. Life from any damage resulting from the negligent performance of the agreement. That indemnity included the costs of court proceedings and attorney fees. Jones was under obligation to make indemnity to N.Y. Life for the negligent loss of the principal's property, moreover, on principles of agency quite independently of any formal agreement between them. *State ex rel. Algiere v. Russell,* 223 S.W.2d 481, 483[3–6] (Mo. banc 1949). Thus, the payment by Jones to American Nursing of the sums due under the assignment, but negligently paid to the Ryans, was under the compulsion of a legal liability. Jones was not a volunteer. *Cole v. Morris,* 409 S.W.2d at 670[3].

Nor, as Ryan argues, does the circumstance that N.Y. Life had not yet paid American Nursing, and so incurred a "loss," render Jones a volunteer. The payment to Ryan of money due American Nursing was already a "loss" to N.Y. Life since the money was not owed Ryan, and the obligation to American Nursing under the assignment still had to be paid. In the circumstances of these transactions, the payment by Jones was of a subsistent N.Y. Life obligation to American Nursing and entitled Jones to succeed to the rights of N.Y. Life to recoup from the Ryans the "loss" of the mispayment. The equity of

---

**1.** The respondent Antoinette Ryan did not file a brief nor join in the brief of respondent John Ryan.

subrogation simply operates to ensure that the person who in fact owes the debt [the Ryans] must pay it. D. Dodds, *Remedies* § 4.3, p. 250 (1973).

 The doctrine of subrogation, moreover, is one of equity. Its aim is to do perfect justice and prevent injustice among all the parties, and to that end does not stand on form to give its aid. *State Sav. Trust Co. v. Spencer*, 201 S.W. at 969[1]. That the primary debt of another may have been paid to the creditor indirectly rather than directly, or even prematurely, therefore, does not cut off the right of subrogation to the person under legal obligation to make the payment. *Quality Wood Chips, Inc. v. Adolphsen*, 636 S.W.2d at 97; *Frago v. Sage*, 737 S.W.2d at 483[1–5]. To succeed to the shoes of the primary debtor, rather, it is enough that the person pay the debt in self-protection against a perceived loss should the debt not be discharged. *Id.* The payment by Jones to American Nursing was the response to the demand by N.Y. Life not only for indemnity but also to defend against the suit by American Nursing brought against N.Y. Life for the cost of the medical services to Antoinette Ryan. The avoidance of the cost of the defense of that suit was alone sufficient reason for Jones to intervene by payment directly to American Nursing, and so be subrogated to the rights of N.Y. Life in relation to that debt.

 Ryan then argues that, in any event, Jones has no cause of action on the cross-claim because, upon principle, "one wrongdoer upon payment of his debt is not subrogated to claims against another wrongdoer."[2] If by that aphorism Ryan intends the peremptory rule, that an agent who negligently misdelivers the property of its principal to another person may not succeed to the rights of the principal to recover the property from that other person, then he depletes the doctrine of subrogation of its efficacy as an instrument of perfect equity.

 The rule of restitution is otherwise. "A person to whom an agent delivers money or goods belonging to his principal, or on account of his principal, is subject to liability to the agent for their retention *if such person is thereby unjustly enriched at the expense of the agent.*" [Emphasis added]. Restatement of Agency (Second) § 373 (1957). The residuum of principle common to all cases of subrogation is that the right is granted to prevent unjust enrichment. R. Goff & G. Jones, *The Law of Restitution*, 376 (1966). "It is the device of equity to prevent unjust enrichment and to compel the ultimate discharge of an obligation by [the one] who in good conscience ought to pay it." *Tucker v. Holder*, 359 Mo. 1039, 225 S.W.2d 123, 126[6] (1949). The fact that the negligence of an agent causes loss to the principal, therefore, will not defeat the right of the agent to subrogation unless his conduct was such as to deny him the consideration of a court of equity. *Brinckerhoff v. Holland Trust Co.*, 159 F. 191, 205 (C.C.S.D.N.Y.1908); 73 Am.Jur.2d *Subrogation* § 52 (1974).

 The right to restitution for unjust enrichment presupposes (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit. *Petrie v. LeVan*, 799 S.W.2d 632, 635[4–6] (Mo.App.1990). The evidence at best intendment to the cross-claim shows *prima facie* that the Ryans were enriched by the receipt from Jones of the N.Y. Life benefits of $35,731.45 not due them, and that they retained the money although they had assigned those, and the other benefits payable under the Plan for the home care services, to American Nursing. The evi-

---

**2.** The argument cites *St. Louis & S.F. Ry. v. Excello Feed Milling Co.*, 215 S.W. 755 (Mo. 1913), but to what purpose, is not evident. *Excello* does not directly bear upon the issue to which it is given in response: the right of an agent who has acted negligently with the property of the principal to be subrogated to the rights of the principal against the third person to whom the property was delivered. The opinion is cited in *In re Jamison's Estate*, 356 Mo 602, 202 S.W.2d 879 (1947) [at 884] to hold that "[t]he doctrine [of subrogation] does not apply where one primarily liable pays his own debt."

dence that Jones made reimbursement to N.Y. Life under the indemnity agreement for the careless payment to the Ryans proves presumptively that the enrichment was at the expense the cross-claimant Jones as the surrogate for N.Y. Life, whose primary obligation to American Nursing it reimbursed. The element that remains to prove unjust enrichment, and hence *prima facie* the right of Jones to cross-claim for subrogation, is that it would be unjust for the Ryans to retain the benefit. In that assessment, it is equitable principle and good conscience that govern. *Farmers New World Life Ins. Co. v. Jolley*, 747 S.W.2d 704, 705 (Mo.App.1988); *Brinckerhoff v. Holland Trust Co.*, 159 F. at 205.

██ Ryan argues that Jones as an "admitted wrongdoer" disentitles it to equity and the right of subrogation "as a matter of law." There is no intimation in the evidence that Jones acted for personal advantage or that Jones intended anything other than the best interests of N.Y. Life. There is the intendment only that Jones acted honestly and in good faith, although carelessly. The carelessness of a payor, merely, is not a sufficient reason for equity to deny recovery of the unjust gain. 4 G. Palmer, *Law of Restitution* § 14.8 (1978). The sense of the evidence that Jones, although negligent, acted without design to commit a positive wrong and reimbursed its principal for the consequences of the error, satisfies the condition that one who seeks equity must do equity and come with clean hands. *Farmers New World Ins. Co. v. Jolley*, 747 S.W.2d at 705[1].

The Ryans, on the other hand, benefit from a double compensation of a single obligation. They benefit from the health care services already accepted from American Nursing, and they benefit from the payment to them of the cost of those services, although they already assigned the payment to American Nursing "as an express inducement to provide the services." The Ryans then not only retained the unjust gain, but used the money to invest for further gain.[3] This was done with knowledge that the money was owed to and meant for American Nursing. Jones has the outstanding and superior claim to the aid of equity to be restored to the money mistakenly paid to the Ryans. It would be unjust in the circumstances to allow the Ryans to retain the double recovery and so enrich themselves at the expense of Jones.

The evidence proves a right to subrogation *prima facie*. It was error to enter a directed verdict against the Jones cross-claim for subrogation against the Ryans.

## II. Real Party In Interest

██ Ryan argues next that the right of Jones to subrogation assumed, the direction of verdict was nevertheless proper because Jones was not the real party in interest. Rule 52.01 provides that every civil action shall be brought in the name of the real party in interest. The purpose of the rule is to require that the action be brought by the person who under the substantive law is entitled to enforce the right. *Janssen v. Guaranty Land Title Co.*, 571 S.W.2d 702, 706[7–9] (Mo.App.1978). It confines standing to sue to a litigant with an actual and justiciable interest susceptible of protection in the action. *In re D.M.H.*, 516 S.W.2d 785, 787[6–8] (Mo.App. 1974).

Ryan argues that under Missouri substantive law "the determination of the real party in interest in matters of subrogation/assignment is based upon which party has legal title to the claim being asserted."

3. The evidence was that John Ryan, himself a lawyer, acted on behalf of his mother, Antoinette Ryan, in the assignment to American Nursing of the benefits under the Plan payable for nursing care given her. The assignment was executed by his signature, and there is no argument here that he was not aware of its provisions. The essential argument here—as already explored—is that the payment was made by Jones as a volunteer, so that Jones was not entitled to the equity of subrogation. The responses of the mother, Antoinette Ryan, to requests for admissions acknowledges that the son acted as her agent and within the scope of that authority in the execution of the assignment. She was not able to definitively admit that her son acted within her authority in his disposition of the N.Y. Life checks mistakenly remitted by Jones.

The determination of legal title, in turn, "depends upon whether or not there has been an assignment of the cause of action which depends upon a specific agreement transferring title." The argument concludes that because Jones claims the right to sue the Ryans by subrogation to the claim of N.Y. Life, N.Y. Life "must be considered the real party in interest." Thus, the right of Jones to claim subrogation against the Ryans notwithstanding, the direction of verdict against Jones was proper because the Jones cross-claim was not by the real party in interest.

It will not do to respond to that point on its own terms. The premises are garbled and lead to a conclusion of *non sequitur*. Subrogation may be the result of contract and arise by agreement of the parties. That species of right is classified as *conventional subrogation*. *Kroeker v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d at 110[2–4]. It is often the instrument whereby an insurer provides for the right of subrogation against a tortfeasor for whose delict the insurer was required to indemnify property damage to the insured under the policy of insurance. In those cases where the policy did not cover the entire damage to the property of the insured [as by a deductible amount payable by the insured], the insurer acquired equitable title by subrogation to the extent of the loss paid, but the legal title for the damage to the owned property remained in the insured. For that reason the insured was the real party in interest and alone could maintain the suit against the tortfeasor. To accommodate the policy against multiple suits from a split cause of action that Rule 52.01 reflects, insurance agreements often provide for the assignment of the whole claim to the insurer, to include the part to which the insurer is subrogated as well as the part for which the insurer did not pay, so as to vest legal title to the whole claim in the insurer as well as the right to maintain suit against the tortfeasor.[4]

The right of Jones to subrogation, however, is not founded on contract, but is the creation of equity to enforce a right of restitution and so prevent an unjust enrichment. The cross-claim pleads a cause of action by Jones as subrogee of N.Y. Life against the Ryans for money received by them and retained to their unjust enrichment. It is a theory of recovery subsumed by the money received remedy. *Donovan v. Kansas City*, 352 Mo. 430, 175 S.W.2d 874, 884[17] (banc 1943), *modified*, 179 S.W.2d 108 (banc 1944), *appeal dismissed*, 322 U.S. 707, 64 S.Ct. 1049, 88 L.Ed. 1551 (1944). It is the very nature of subrogation to substitute the person who pays the debt of another to all the rights and remedies of that other in relation to the debt. Equity revives the obligation discharged in law for the benefit of the person entitled to subrogation. Restatement of Restitution § 162 comments a & d (1936). It follows that a person who in equity succeeds to the rights and remedies of another is a person who is entitled under the substantive law to enforce those rights. It is a person with a justiciable interest to litigate, and the real party in interest within Rule 52.01. *Webster v. Sterling Finance Co.* 351 Mo. 754, 173 S.W.2d 928, 931[9,10 & 6] (Mo.1943); *Brandkamp v. Chapin*, 473 S.W.2d 786, 788[1,2] (Mo.App.1971). Nor is there any element of risk of a split cause of action, and so the multiplicity of suits that Rule 52.01 discountenances. The evidence proves an equitable right by Jones to the entire money unjustly received by the Ryans, and so subject to restoration as an integer. There is no evidence of that any portion of the $35,731.45 unjustly retained by the Ryans is subject to the claim or right of anyone else.

The point that Jones was without standing under Rule 52.01 as the real party in interest to bring and maintain the cross-claim for subrogation is not only without merit, but verges on the frivolous.

---

**4.** The skein of that rule of adjudication is unraveled in a string of decisions from *Steele v. Goosen*, 329 S.W.2d 703 (Mo.1959) and *Hayes v. Jenkins*, 337 S.W.2d 259 (Mo.App.1960); *Kroeker v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d 105 (Mo.App.1971); *Holt v. Myers*, 494 S.W.2d 430 (Mo.App.1973) to *State Farm Mut. Auto. Ins. Co. v. Jessee*, 523 S.W.2d 832 (Mo.App.1975).

### III. Sufficiency of the Evidence

Ryan contends nevertheless that the directed verdict against the cross-claim must be sustained because the evidence was not sufficient to sustain either theory of recovery pleaded, conversion and money received.

Our discussion on the subrogation and real party in interest issues fully responds to the argument, inherently redundant, that the count for money received was not proven *prima facie*. The cases Ryan cites to this point are not relevant either to the pleading as an equitable claim for the right of subrogation to the money unjustly retained by the Ryans, or to the theory of proof on which the evidence was received.

The contention that the evidence was not sufficient to prove the conversion claims *prima facie* is not contested by Jones and is otherwise valid. Conversion does not lie for money represented by a general debt. It is otherwise where the funds are placed in the custody of another for a specific purpose. In such a case "their diversion for other than such specified purpose subjects the holder to liability in conversion." *Dillard v. Payne*, 615 S.W.2d 53, 55[1,2] (Mo.1981). The point is sustained.

The judgment is reversed and the cause is remanded for retrial on the money received counts.

All concur.

MANFORD, J. did not participate in the decision of this case due to his death on February 12, 1991.